IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
October 6, 2009 Session

## JOSEPH DAVIS ET AL. v. PATRICK J. McGUIGAN ET AL.

**Appeal by Permission from the Court of Appeals**
**Circuit Court for Davidson County**
**No. 05C-115      Hamilton V. Gayden, Jr., Judge**

_____

**No. M2007-02242-SC-R11-CV - Filed October 26, 2010**

_____

This appeal arises from a trial court's grant of summary judgment in an action against a real estate appraiser for fraudulent misrepresentation and for violation of the Tennessee Consumer Protection Act. A husband and wife alleged that the appraiser, who was hired by the bank financing the husband and wife's home construction, recklessly overestimated the value of their proposed construction and that they reasonably relied on the appraisal value to their detriment. The Court of Appeals affirmed the trial court's ruling, holding that an appraisal is an opinion that cannot form the basis for a fraudulent misrepresentation claim. We hold that an opinion can form the basis of a fraudulent misrepresentation claim. We further hold that genuine issues of material fact preclude summary judgment as to the husband and wife's claims against the appraiser. We reverse the Court of Appeals and remand the case to the trial court for further proceedings consistent with this opinion.

**Tenn. R. App. P. 11 Appeal by Permission;**
**Judgment of the Court of Appeals Reversed;**
**Case Remanded to Trial Court for Further Proceedings**

JANICE M. HOLDER, J., delivered the opinion of the Court, in which GARY R. WADE and SHARON G. LEE, JJ., joined. WILLIAM C. KOCH, JR., J., filed a separate dissenting opinion, in which CORNELIA A. CLARK, C.J., joined.

Daniel P. Berexa, C. Bennett Harrison, Jr. and Brian W. Holmes, Nashville, Tennessee, for the appellants, Joseph Davis and Kimberli Davis.

Michael G. Hoskins, Nashville, Tennessee, for the appellees, Patrick J. McGuigan and McGuigan & Associates.

**OPINION**

## I. Facts and Procedural History

Joseph and Kimberli Davis ("the Davises") purchased an unimproved, corner lot in the Horseshoe Bend subdivision near Nashville, Tennessee, for $135,500. They subsequently retained an architect to design a custom home for the lot and selected Frawood Custom Builders as the contractor. After working extensively with the Davises to refine the home's design and to select amenities, furniture, and fixtures for the home, the contractor calculated that the cost of building the home to the Davises' specifications was $595,394.50, resulting in a total cost of $730,894.50 for the lot and construction.

To finance the construction, the Davises contacted Alene Gnyp, a loan consultant at SunTrust Bank ("SunTrust") and submitted a Uniform Residential Loan Application to SunTrust for a $580,000 residential loan. The loan application states, in part, "The [Davises] specifically acknowledge and agree that: . . . (9) the Lender, its agents, successors and assigns make no representation or warranties, express or implied, to the Borrower(s) regarding the property, the condition of the property, or the value of the property." As part of the loan application, the Davises also signed a document entitled "Disclosure Notices-Right to Receive A Copy of Appraisal," which states, "You have the right to a copy of the appraisal report used in connection with your application for credit." SunTrust began processing the Davises' loan application on May 15, 2002.

On June 18, 2002, an employee of SunTrust faxed an Appraisal Request to Patrick McGuigan, an appraiser whom SunTrust regularly used. The employee had written "Rush!" at the top of the request, and the request stated that the "sales price" for the Davises' proposed house was $735,000. Mr. McGuigan was provided the contractor's plans and specifications for the Davises' custom home. Mr. McGuigan accepted the assignment and executed a Uniform Residential Appraisal Report the next day.

According to the appraisal report, Mr. McGuigan used two approaches to appraise the property: the "cost approach" and the "sales comparison approach." Pursuant to the cost approach, Mr. McGuigan consulted the "Marshall & Swift Residential Cost Handbook, local builder estimates, and [his] own cost files" to estimate the cost per square foot to reproduce the home. Mr. McGuigan then multiplied the estimated cost per square foot by the total square feet of the home, added the product to the estimated site value, and added an "'As-is' Value of Site Improvements." Using the cost approach, Mr. McGuigan appraised the property's value as $731,000 if the home were completed according to the contractor's plans and specifications.

Using the sales comparison approach, Mr. McGuigan estimated the amount that a reasonable buyer would pay for the home by evaluating recent sales of comparable properties and adjusting the comparable properties' sales prices based on the subject home's specifications. Mr. McGuigan did not use any homes from the Horseshoe Bend subdivision for comparison and instead chose the recent sales of three properties in the LaurelBrooke subdivision, located approximately one mile from the Horseshoe Bend subdivision. According to the appraisal report,

> These sales were chosen due to their similarity to the subject [property] in size, quality, and appeal and are deemed the best and/or the most similar sales available as of the date of this report. All sales were given site adjustments due to the known difference in site values. Design/Appeal adjustments were given to all sales because the subject [property] is one story and cost[s] more to build. Equal weight was given to all sales in estimating the market value for the subject property.

Using the sales comparison approach, Mr. McGuigan appraised the Davises' property value as $735,000 if the home were completed according to its plans and specifications.

The appraisal report estimates the market value of the home as $735,000. It reconciles the differences in value resulting from the cost approach and the sales comparison approach by stating that "[b]ecause buyers rely heavily on comparisons, the direct sales comparison approach is considered the best indicator of market value" but that "[t]he cost approach supports the sales comparison approach."

Mr. McGuigan forwarded a copy of his appraisal report to SunTrust on June 21, 2002, including the Uniform Standards of Professional Appraisal Practice Compliance Addendum with the report. Under the heading "Purpose of the Appraisal," Mr. McGuigan included the following statement: "This appraisal report is prepared for the sole and exclusive use of the lender as mentioned in the client section of this report, to assist with the mortgage lending decision. It is not to be relied upon by third parties for any purpose, whatsoever." SunTrust was the only entity identified in the Lender/Client section of the appraisal report.

Ms. Gnyp informed the Davises by telephone that their proposed home had been appraised for $735,000 and that their loan application for $580,000 had been approved. At some time between June 21 and June 24, 2002, the Davises signed a cost-plus contract with Frawood Custom Builders to construct their home. The Davises had not obtained a copy of the appraisal report before they signed the contract with Frawood Custom Builders, nor did

they read the appraisal report when they received a copy of it at the loan closing on July 2, 2002.

After living in the completed home for more than a year, Mr. Davis returned to SunTrust seeking a home equity line of credit. SunTrust ordered another appraisal of the Davises' home as part of the loan approval process, and the second appraisal stated that the home's value was $510,000. The bank denied the Davises' loan application. After inquiring into the denial, Mr. Davis learned of the second appraisal. Around the same time, Ms. Davis became unemployed.

The Davises subsequently decided to sell their home. They consulted six real estate agents, each of whom told them that the home would sell for between $590,000 and $625,000. The Davises hired real estate agent Michael Hays to sell the property. On Mr. Hays's advice, the Davises listed the property for sale at $679,000 on November 30, 2004. The Davises accepted an offer on the home from the first prospective buyer and, on April 8, 2005, closed on the sale of the property for $660,000. On April 13, 2005, Mr. Davis filed a complaint for divorce, stating that he and Ms. Davis had separated on November 11, 2004.

On April 20, 2005, Mr. and Ms. Davis filed a complaint against Mr. McGuigan in the Circuit Court of Davidson County. The Davises asserted that Mr. McGuigan had intentionally or negligently misrepresented the market value of their home when he appraised it in June 2002 and that he had also violated the Tennessee Consumer Protection Act. After discovery, the trial court entered an order granting Mr. McGuigan summary judgment with regard to the Davises' intentional misrepresentation and Tennessee Consumer Protection Act claims. The Davises subsequently filed a notice of voluntary dismissal of their negligent misrepresentation claim.

The Davises appealed the summary judgment as to the intentional misrepresentation and Tennessee Consumer Protection Act claims to the Court of Appeals. The intermediate appellate court affirmed summary judgment, holding in part that because "appraisals are not considered facts, but rather estimates or opinions," an appraisal cannot provide the basis for an intentional misrepresentation claim. Davis v. McGuigan, No. M2007-02242-COA-R3-CV, 2008 WL 4254150, at *6 (Tenn. Ct. App. Sept. 10, 2008). We granted the Davises permission to appeal.

## II. Analysis

Summary judgment may be granted only if the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. Because the granting or denying of summary judgment is

a question of law, we apply a de novo standard of review. Blair v. W. Town Mall, 130 S.W.3d 761, 763 (Tenn. 2004). We first address whether the trial court properly granted Mr. McGuigan summary judgment on the Davises' intentional misrepresentation claim before turning to whether summary judgment was properly granted on the Davises' Tennessee Consumer Protection Act claim.

## A. Intentional Misrepresentation Claim

The Davises must prove six elements to establish their claim of intentional misrepresentation at trial: (1) that Mr. McGuigan made a representation of an existing or past fact; (2) that the representation was false when it was made; (3) that the representation involved a material fact; (4) that Mr. McGuigan made the representation recklessly, with knowledge that it was false, or without belief that the representation was true; (5) that the Davises reasonably relied on the representation; and (6) that they were damaged by relying on the representation. Walker v. Sunrise Pontiac-GMC Truck, Inc., 249 S.W.3d 301, 311 (Tenn. 2008) (citations omitted).

To satisfy his burden of production for summary judgment on the Davises' intentional misrepresentation claim, Mr. McGuigan must either produce evidence or refer to evidence in the record that affirmatively negates an essential element of the Davises' claim or shows that the Davises cannot prove an essential element of their claim at trial. Mills v. CSX Transp., Inc., 300 S.W.3d 627, 631 (Tenn. 2009) (citing Hannan v. Alltel Publ'g Co., 270 S.W.3d 1, 8-9 (Tenn. 2008)). To affirmatively negate an essential element of the claim of intentional misrepresentation, Mr. McGuigan must point to evidence that tends to disprove a material factual allegation made by the Davises. Id. (citing Martin v. Norfolk S. Ry. Co., 271 S.W.3d 76, 84 (Tenn. 2008)). Mr. McGuigan has identified evidence to challenge the first, fourth, fifth, and sixth elements.[1]

i.

Regarding the first element, Mr. McGuigan contends that his appraisal was an opinion, not a representation of fact, and that an opinion cannot provide a basis for the Davises to show at trial that Mr. McGuigan made a representation of existing or past fact. For support, Mr. McGuigan points to his appraisal report, which states that it provides an estimate of the market value. Additionally, we observe that a real estate appraisal is defined by Tennessee Code Annotated section 62-39-102(3) (2009) as "the act or process of

---

[1] In his brief, Mr. McGuigan contends that there is no genuine issue of material fact as to any of the six elements. Before the trial court, however, he argued that summary judgment was warranted only on the first, fourth, fifth, and sixth elements. We therefore consider Mr. McGuigan's arguments regarding the second and third elements to be waived. See Fayne v. Vincent, 301 S.W.3d 162, 171 (Tenn. 2009).

developing an *opinion of value* of identified real estate." (Emphasis added). The Davises do not dispute that an appraisal is an opinion of value but argue that it is a representation for the purpose of an intentional misrepresentation claim.

In Sunderhaus v. Perel & Lowenstein, this Court stated that the general rule is that "ordinarily representations of value made by one seeking to dispose of property commercially are to be regarded as expressions of opinion . . . not constituting a basis of fraud." 388 S.W.2d 140, 142 (Tenn. 1965). We observed, however, "a number of exceptions to this general rule." Id. "Representations as to market price or market value are not mere statements of opinion, but are representations of fact which, if false, will support an action for fraud or deceit." Id. (quoting 23 Am. Jur. *Fraud and Deceit* § 62). We also stated,

> Wherever a party states a matter, which might otherwise be only an opinion, and does not state it *as the mere expression of his own opinion*, but affirms it *as an existing fact* material to the transaction, so that the other party may reasonably treat it as a fact, and rely and act upon it as such, then the statement clearly becomes an affirmation of fact within the meaning of the general rule, and may be a fraudulent misrepresentation.

Id. at 142-43 (quoting 3 Pomeroy's Equity Jurisprudence § 878b (5th ed. 1941)). "The statements which most frequently come within this branch of the rule are those concerning value." Id. at 143 (quoting 3 Pomeroy's Equity Jurisprudence § 878b (5th ed. 1941)).

The Restatement (Second) of Torts also states that an opinion may give rise to an intentional misrepresentation claim. Restatement (Second) of Torts § 525 (1977). It further explains that the form of an opinion may control whether it is a representation. "'I believe that there are ten acres here,' is a different statement . . . from 'The area of this land is ten acres.' The one conveys an expression of some doubt while the other leaves no room for it." Restatement (Second) of Torts § 538A cmt. c (1977). The speaker's relationship to the recipient also is important. A person may doubt a seller's statement about the value of the property being sold while the same person may accept as true a disinterested expert's opinion of value about the same property. See Restatement (Second) of Torts § 539 cmt. c (1977).[2] Indeed, section 543 of the Restatement (Second) of Torts states, "The recipient of a fraudulent misrepresentation of opinion is justified in relying upon it if the opinion is that of

_____

[2] "[A] representation that a person who is reasonably believed by the recipient to be disinterested has a particular opinion[] may reasonably be understood as impliedly asserting that the opinion expressed is an honest one and that he knows of no facts that make it incorrect. This is true since there is no apparent reason for a disinterested person to exaggerate the facts upon which it may be assumed that his opinion is based and of which the recipient knows nothing."

a person whom the recipient reasonably believes to be disinterested and if the fact that such person holds the opinion is material."

We therefore hold that an opinion of value may provide the basis for a fraudulent misrepresentation claim and overrule the holding of the Court of Appeals that Mr. McGuigan's appraisal is not actionable because it is an opinion of value. Because Mr. McGuigan has not shown that the Davises are unable to prove the first element of their intentional misrepresentation claim at trial, he has not satisfied his burden of production for summary judgment on the first element. We therefore turn to Mr. McGuigan's arguments concerning the other elements of the Davises' intentional misrepresentation claim.

ii.

Regarding the fourth element, Mr. McGuigan contends that there is no genuine issue of material fact as to whether he made the representation recklessly, with knowledge that it was false, or without belief that the representation was true. In the context of determining whether punitive damages are warranted, we have held that a person acts recklessly when "the person is aware of, but consciously disregards, a substantial and unjustifiable risk of such a nature that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances." Flax v. DaimlerChrysler Corp., 272 S.W.3d 521, 531 (Tenn. 2008) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 (Tenn. 1992)); see Doe 1 ex rel. Doe 1 v. Roman Catholic Diocese of Nashville, 154 S.W.3d 22, 37-38 (Tenn. 2005).

In support of his position, Mr. McGuigan points to his deposition in which he states that he considered recent sales of homes in the Horseshoe Bend subdivision but deliberately used homes from the LaurelBrooke subdivision because he thought they provided a better comparison for the proposed construction. Mr. McGuigan also points to his appraisal's use of the objective cost approach as well as its use of the more subjective sales comparison approach to arrive at the $735,000 value of the house. Finally, Mr. McGuigan points to the appraisal report, which states that it was prepared in accordance with the Uniform Standards of Professional Appraisal Practice ("USPAP"). The Tennessee Real Estate Appraiser Commission, which was created by statute, has adopted the USPAP as its standard for professional practice. Real Estate Appraisers Licensing & Certification Act, ch. 865, § 7, 1990 Tenn. Pub. Acts 412-13 (codified as amended at Tenn. Code Ann. §§ 62-39-201 to -202); Tenn. Comp. R. & Regs. 1255-5-.01 (Lexis through May 2010).

Mr. McGuigan has affirmatively negated an essential element of the Davises' cause of action. By pointing to evidence that he considered homes in the LaurelBrooke subdivision to provide better comparisons, Mr. McGuigan has provided evidence that tends to disprove

the Davises' factual allegation that he intentionally chose homes in a more upscale neighborhood to inflate the proposed home's value. See Mills, 300 S.W.3d at 631. Also, Mr. McGuigan's statement that the value stated in the appraisal report was supported by the cost approach is evidence that tends to disprove the Davises' factual allegation that Mr. McGuigan did not believe his appraised value was accurate. Finally, by pointing to evidence that he adhered to the standard of professional practice for appraisers, Mr. McGuigan has provided evidence that tends to disprove the Davises' factual allegation that his actions grossly deviated from the standard of care for an ordinary appraiser. Mr. McGuigan therefore has satisfied his burden of production for summary judgment on this element.

Consequently, the Davises must "produce evidence of specific facts establishing that genuine issues of material fact exist" to show that summary judgment is not warranted. Martin, 271 S.W.3d at 84. The Davises may satisfy their burden of production by:

> (1) pointing to evidence establishing material factual disputes that were over-looked or ignored by the moving party; (2) rehabilitating the evidence attacked by the moving party; (3) producing additional evidence establishing the existence of a genuine issue for trial; or (4) submitting an affidavit explaining the necessity for further discovery pursuant to Tenn. R. Civ. P., Rule 56.06.

Id. (quoting McCarley v. W. Quality Food Serv., 960 S.W.2d 585, 588 (Tenn. 1998)).

The Davises point to several specific facts to establish a genuine issue of material fact, including that the appraisal request from SunTrust asked for a "Rush!" appraisal; the request included the "sales price" for the proposed construction, which both parties agree is unnecessary for an appraiser's analysis; Mr. McGuigan completed the appraisal in less than one business day; the appraisal value matched the "sales price"; and Mr. McGuigan did not use any properties in the Horseshoe Bend subdivision when using the sales comparison approach to determine the market value of the proposed construction.

Additionally, the Davises point to the deposition and affidavit of J. Donald Turner, an appraiser whom the Davises disclosed as an expert witness testifying on their behalf.[3] Mr.

---

[3] Mr. McGuigan challenges Mr. Turner's affidavit based on allegedly contradictory statements in his affidavit and deposition regarding whether Mr. McGuigan had intentionally created an inaccurate appraisal of the Davises' home. We conclude that the trial court did not err in denying Mr. McGuigan's motion to strike the statement in the affidavit pursuant to the cancellation rule because the statement in the affidavit is not contradictory to the statements in the deposition. See Church v. Perales, 39 S.W.3d 149,

(continued...)

Turner stated that Mr. McGuigan failed to conform to the USPAP by failing to include properties from the Horseshoe Bend subdivision for comparison when conducting the sales comparison approach. Mr. Turner stated that placing too much reliance on the cost approach to appraise proposed construction is inappropriate because a home's cost of construction does not necessarily equal the home's ultimate value. He stated that an appraisal of proposed construction should include properties for comparison from the same neighborhood to prevent overbuilding, that is, spending significantly more to construct a home than other homes in the neighborhood are worth.

To determine whether the specific facts identified by the Davises create a genuine issue of material fact precluding summary judgment, we take the strongest legitimate view of the evidence in favor of the Davises, allow all reasonable inferences in their favor, and discard all countervailing evidence. Blair, 130 S.W.3d at 768 (quoting Byrd v. Hall, 847 S.W.2d 208, 210-11 (Tenn. 1993)). There is a genuine issue of material fact if the undisputed facts and inferences drawn in the Davises' favor permit a reasonable person to reach more than one conclusion. See Staples v. CBL & Assocs., Inc., 15 S.W.3d 83, 89 (Tenn. 2000). In reviewing the statements of Mr. Turner, a reasonable person can reach different conclusions as to whether Mr. McGuigan deviated from the USPAP in preparing his appraisal of the Davises' proposed home and whether that deviation was substantial enough to amount to a conscious disregard of a substantial and unjustifiable risk of such a nature so as to constitute a gross deviation from the standard of care.[4] The Davises therefore have shown that there is a genuine issue of material fact as to whether Mr. McGuigan acted recklessly, and summary judgment is not warranted based on this element.[5]

---

[3] (...continued)
169-70 (Tenn. Ct. App. 2000); accord Johnston v. Cincinnati N.O. & T.P. Ry. Co., 240 S.W. 429, 435-36 (Tenn. 1922). Although there may be appropriate questions regarding the weight to be given Mr. Turner's testimony at trial in light of his equivocation, determining the weight of the evidence is not appropriate at the summary judgment stage. Martin, 271 S.W.3d at 87.

[4] The dissent states that "Mr. Turner's testimony regarding Mr. McGuigan's beliefs or intent in performing the appraisal should not be considered in determining whether the trial court properly granted the summary judgment" because "Mr Turner's testimony regarding whether Mr. McGuigan intentionally performed an inaccurate appraisal is, by his own admission, speculation." The speculative nature of Mr. Turner's testimony was not raised by Mr. McGuigan. If it had been raised, however, it would not preclude us from considering Mr. Turner's testimony that Mr. McGuigan's conduct was outside the standard of care for appraisers, which cannot be characterized as speculation. It is on the basis of Mr. Turner's testimony concerning the standard of care for appraisers that we recognize a genuine issue of material fact that precludes summary judgment based on the fourth element.

[5] The dissent disagrees with this holding, stating that "the Davises have been unable to present any direct evidence substantiating their assertion that Mr. McGuigan 'intentionally or recklessly misrepresented
(continued...)

iii.

Regarding the fifth element, Mr. McGuigan argues that the Davises cannot show they reasonably relied on his appraisal as a matter of law. We must first address how the Davises can show at trial that they reasonably relied on Mr. McGuigan's appraisal before we can determine whether Mr. McGuigan has pointed to evidence satisfying his burden of production for summary judgment.

Whether a person's reliance on a representation is reasonable generally is a question of fact requiring the consideration of a number of factors. E.g., City State Bank v. Dean Witter Reynolds, Inc., 948 S.W.2d 729, 737 (Tenn. Ct. App. 1996). The factors include the plaintiff's sophistication and expertise in the subject matter of the representation, the type of relationship – fiduciary or otherwise – between the parties, the availability of relevant information about the representation, any concealment of the misrepresentation, any opportunity to discover the misrepresentation, which party initiated the transaction, and the specificity of the misrepresentation. See, e.g., id.; accord Allied Sound, Inc. v. Neely, 58 S.W.3d 119, 122-23 (Tenn. Ct. App. 2001).

The cause of action alleged by the Davises, however, differs from most intentional misrepresentation claims. The Davises do not allege that Mr. McGuigan directly represented to them the value of the home. Instead, Mr. McGuigan provided the appraisal to SunTrust, and Ms. Gnyp, a SunTrust employee, conveyed the result of Mr. McGuigan's appraisal to the Davises. The Davises in turn contend that they relied on the figure conveyed to them by Ms. Gnyp, not the appraisal report prepared by Mr. McGuigan, when they decided to execute the construction contract.

---

[5] (...continued)
that his best estimate of the value of the plaintiffs' proposed construction was $735,000.'" The dissent reaches this conclusion by applying an incorrect summary judgment analysis. First, a party opposing a summary judgment motion need not present direct evidence. Rather, the party only "must set forth specific facts showing that there is a genuine issue for trial." Tenn. R. Civ. P. 56.06. Second, the dissent acknowledges four undisputed, specific facts introduced by the Davises, excluding the testimony of Mr. Turner. To determine if there is a genuine issue of material fact for trial, we are limited to taking the strongest legitimate view of the evidence in favor of the party opposing the summary judgment motion, allowing all reasonable inferences in that party's favor, and discarding all countervailing evidence. Blair, 130 S.W.3d at 768. Although the dissent acknowledges this standard, it nevertheless evaluates the Davises' facts in the context of "the parties' lengthy and detailed discovery," comparing the Davises' facts to those facts introduced by Mr. McGuigan. Our well-established summary judgment analysis precludes us from weighing facts in this manner. Martin, 271 S.W.3d at 87 (citing Byrd, 847 S.W.2d at 211); accord Martin, 271 S.W.3d at 89 (Koch, J., concurring) (concluding that "[w]hile there may be substantial doubt about the weight that a reasonable jury might give to [a witness's] testimony, it is sufficient for summary judgment purposes to create a genuine issue").

-10-

In an analogous case, the United States District Court for Kansas held that a person seeking to recover for a misrepresentation not heard directly from the source "must demonstrate that his or her reliance on the original fraudulent misrepresentation would have been justifiable." Deboer v. Am. Appraisal Assocs., Inc., 502 F. Supp. 2d 1160, 1168 (D. Kan. 2007). In Deboer, the plaintiff executed a loan guarantee to a company after learning from the company's owner that "a fairly current appraisal from [defendant] American Appraisal" had appraised the value of the company at "'a million three or some such number.'" Id. at 1167. After the company went bankrupt, the plaintiff brought an action for fraudulent misrepresentation against the appraiser.

The district court initially observed that "under Kansas law a third party may have an action for fraud without any direct contact with and without having received any direct misrepresentations from the defrauding party." Id. at 1168. The plaintiff, however, could not base his action "on the pared down version of the appraisal that he received from" the company's owner. Id. Construing section 533 of the Restatement (Second) of Torts, which states that "[t]he maker of a fraudulent misrepresentation is subject to liability for pecuniary loss to another who acts in justifiable reliance *upon it*," the court reasoned that the plaintiff must show that he could justifiably rely on a misrepresentation in the appraisal report, not on the company owner's incomplete summary of the appraisal report, to recover from the appraiser. Id. (emphasis added). The court granted summary judgment to the defendant appraiser because "the appraisal was so laden with qualifications and disclaimers that no reasonable financier would have accepted it as appropriate to support a $595,000 loan guarantee without conducting any further investigation." Id. at 1169.

We agree with the court's reasoning in Deboer. Recovery should be determined based on the defendant's representation, not on how the representation was relayed. To that end, we adopt section 533 of the Restatement (Second) of Torts, which states in its entirety,

> The maker of a fraudulent misrepresentation is subject to liability for pecuniary loss to another who acts in justifiable reliance upon it if the misrepresentation, although not made directly to the other, is made to a third person and the maker intends or has reason to expect that its terms will be repeated or its substance communicated to the other, and that it will influence his conduct in the transaction or type of transaction involved.

To show at trial that they reasonably relied on Mr. McGuigan's representation, the Davises therefore must show that (1) they could have reasonably relied on Mr. McGuigan's appraisal report, (2) Mr. McGuigan intended or had reason to expect that the terms or substance of his

appraisal report would be repeated to the Davises, and (3) Mr. McGuigan intended or had reason to expect that his appraisal would influence the Davises' conduct in deciding to proceed with the construction.

We now turn to whether Mr. McGuigan has identified or introduced facts in the record that affirmatively negate the reasonable reliance element of the Davises' claim. Mr. McGuigan points to the appraisal report, which states, "This appraisal report is prepared for the sole and exclusive use of the lender [SunTrust] . . . , to assist with the mortgage lending decision. It is not to be relied upon by third parties for any purpose, whatsoever." The evidence shows that Mr. McGuigan stated in the appraisal report that it was prepared solely for the client and that third parties should not rely on it. We hold that this evidence tends to disprove the Davises' material factual allegation that they could have reasonably relied on the appraisal report. It therefore affirmatively negates an essential element of the Davises' claim, and Mr. McGuigan has satisfied his burden of production for summary judgment. See Mills, 300 S.W.3d at 631; Hannan, 270 S.W.3d at 8-9.

In response, the Davises point to evidence in the record to identify a genuine issue of material fact as to this element. See Martin, 271 S.W.3d at 84. They point to Mr. Davis's deposition, in which he stated that Ms. Gnyp conveyed to him Mr. McGuigan's appraisal value for the home and that he relied on it as a representation of a disinterested appraiser when proceeding with construction. They point to the appraisal report, which states, "I stated in the appraisal report only my personal, unbiased, and professional analyses, opinions, and conclusions," and "I certify to the best of my knowledge and belief: The statements of fact contained in this report are true and correct." The Davises also point to the statements in Mr. Turner's affidavit that "[a]ppraisers know that buyers of property are interested in and could learn of the value at which they appraise that property. Appraisers know that those buyers . . . are likely to rely upon their conclusions in making decisions regarding the purchase, or in this case construction, of a residence."

Taking the strongest legitimate view of the evidence in favor of the Davises, allowing all reasonable inferences in their favor, and discarding all countervailing evidence, we hold that summary judgment is not warranted based on this element. See Blair, 130 S.W.3d at 768 (quoting Byrd, 847 S.W.2d at 210-11). Looking to the appraisal report, a reasonable person could reach different conclusions as to whether the Davises could have reasonably relied on the appraisal report as a statement of a disinterested expert as to the value of their home.[6]

---

[6] The dissent concludes that no reasonable fact-finder could determine based on the undisputed facts that the Davises relied on Mr. McGuigan's appraisal because, in part, "the Davises could only have relied on the statement of the bank employee that their project had appraised for $735,000." The Davises contend, however, that they reasonably relied on the appraisal estimate from the appraisal report and that they could
(continued...)

See Staples, 15 S.W.3d at 89. Furthermore, looking at the statements of Mr. Turner in his affidavit, a reasonable person could reach different conclusions as to whether Mr. McGuigan had reason to expect that SunTrust would communicate the substance of the appraisal report to the Davises and that the result might influence the Davises' conduct despite the report's disclaimer. As we stated in Martin, "although a trial court may conclude that the plaintiffs' case is not particularly strong, it is not the role of a trial or appellate court to weigh the evidence or substitute its judgment for that of the trier of fact." 271 S.W.3d at 87.

iv.

Regarding the sixth element of the Davises' intentional misrepresentation claim, Mr. McGuigan contends that the Davises sold their home for less than its $735,000 value because of a superseding cause, namely the loss of Ms. Davis's job and the Davises' impending divorce. A superseding cause "breaks the chain of proximate causation and thereby precludes recovery." White v. Lawrence, 975 S.W.2d 525, 529 (Tenn. 1998). To establish that an intervening event is a superseding cause, Mr. McGuigan must show: (1) that the harmful effects of the intervening event occurred after his allegedly reckless conduct; (2) that the intervening event was not brought about by his conduct in forming the appraisal; (3) that the intervening event actively worked to bring about a result that would not have followed from his conduct; and (4) that he could not reasonably foresee the intervening event. White v. Premier Med. Grp., 254 S.W.3d 411, 417 (Tenn. Ct. App. 2007) (citing Godbee v. Dimick, 213 S.W.3d 865, 882 (Tenn. Ct. App. 2006)); see White v. Lawrence, 975 S.W.2d at 529. Because Mr. McGuigan bears the burden of proof at trial to establish this affirmative defense, he must introduce undisputed facts showing the existence of the superseding cause to satisfy his burden of production for summary judgment. See Hannan, 270 S.W.3d at 9 n.6.

Mr. McGuigan points to the deposition of Ms. Davis, who stated that the Davises needed to sell their home because she lost her job and could not make mortgage payments without her income. Mr. McGuigan also identifies the Divorce Complaint filed by Mr. Davis, which states that the Davises separated on November 11, 2004, less than three weeks before they listed the home for sale. Mr. McGuigan further points to the affidavit of the Davises' real estate agent, Mike Hays, who stated that the Davises agreed to list their home for $679,000 without first listing it for $735,000. Finally, Mr. McGuigan points to the affidavit of Steven Johnson, who purchased the Davises' home. In his affidavit, Mr. Johnson states that he and his wife noticed signs of unemployment and divorce and "extended an offer

---

[6] (...continued)
have reasonably relied on the appraisal report if they reviewed it. By pointing to specific facts showing that the appraisal report stated it was an unbiased and accurate estimate of the home's value, the Davises have identified a genuine issue of material fact as to whether they could have reasonably relied on Mr. McGuigan's representation.

to the Davises that was substantially below their asking price[] because we felt the Davises were exceptionally motivated to sell the property and were willing to take less than what the property was worth." Mr. Johnson also stated that he and his wife "might have been willing to pay more than the list price."

Mr. McGuigan has not satisfied his burden of production for summary judgment on this element. He has not pointed to undisputed facts establishing the third element of the superseding cause analysis, that the intervening events of Ms. Davis's unemployment or the Davises' divorce brought about a result that would not have followed from Mr. McGuigan's appraisal. More specifically, the record includes the affidavit of Mr. Davis, in which Mr. Davis states that they were not unduly motivated to sell their home and that they had the financial ability to continue paying their mortgage despite Ms. Davis's loss of her job. Viewing the evidence in a light most favorable to the Davises, a reasonable person could reach different conclusions as to whether the Davises' circumstances resulted in the sale of their home for less than market value. See Staples, 15 S.W.3d at 89. Mr. McGuigan has failed to show that there is no genuine issue of material fact regarding the existence of a superseding cause, and summary judgment therefore is not warranted based on the sixth element of the intentional misrepresentation claim. See McClung v. Delta Square Ltd. P'ship, 937 S.W.2d 891, 905 (Tenn. 1996) (stating that "the existence of a superseding, intervening cause [is a] jury question[] unless the uncontroverted facts and inferences to be drawn from the facts make it so clear that all reasonable persons must agree on the proper outcome" (citations omitted)).

B. Tennessee Consumer Protection Act

Mr. McGuigan also moves for summary judgment on the Davises' Tennessee Consumer Protection Act claim. The Tennessee Consumer Protection Act creates a cause of action for "[a]ny person who suffers an ascertainable loss of money or property . . . as a result of the use or employment by another person of an unfair or deceptive act or practice declared to be unlawful by" the Consumer Protection Act. Tenn. Code Ann. § 47-18-109(a)(1) (2001). In their complaint, the Davises do not allege that Mr. McGuigan engaged in any specific act or practice declared unlawful by the Tennessee General Assembly in Tennessee Code Annotated section 47-18-104(b) (2001 & Supp. 2009). As such, to establish their Tennessee Consumer Protection Act claim at trial, the Davises must prove that they suffered "an ascertainable loss of money or property . . . as a result" of Mr. McGuigan's "engaging in any . . . act or practice which is deceptive to the consumer or to any other person." Tenn. Code Ann. §§ 47-18-104(b)(27), -109(a).

Mr. McGuigan contends that his actions were neither deceptive nor unfair. "[A] 'deceptive act or practice' is a material representation, practice or omission likely to mislead

a reasonable consumer." Ganzevoort v. Russell, 949 S.W.2d 293, 299 (Tenn. 1997) (quoting Bisson v. Ward, 628 A.2d 1256, 1261 (Vt. 1993)); see Fayne, 301 S.W.3d at 177. An act is unfair if it "causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition." Tucker v. Sierra Builders, 180 S.W.3d 109, 116-17 (Tenn. Ct. App. 2005) (quoting 15 U.S.C.A. § 45(n) (1977)).

We need not decide whether Mr. McGuigan satisfied his burden of production for summary judgment because the Davises have identified a genuine issue of material fact precluding summary judgment on this claim. Mills, 300 S.W.3d at 634-35. The Davises point to the appraisal report's use of the sale of homes only from the LaurelBrooke subdivision for the sales comparison approach. The Davises also point to the deposition of Mr. Turner, who opined that Mr. McGuigan deviated from the standard of care for appraisers in failing to include a home from the Horseshoe Bend subdivision as a comparison. We have held that negligent misrepresentations may be found to be a violation of the Tennessee Consumer Protection Act, see Fayne, 301 S.W.3d at 177, and that "[w]hether a particular act is unfair or deceptive is a question of fact," id. at 170. Viewing the evidence in a light most favorable to the Davises, drawing all reasonable inferences in their favor, and discarding all countervailing facts, a reasonable person could reach different conclusions as to whether Mr. McGuigan's appraisal was unfair or deceptive. See Staples, 15 S.W.3d at 88-89. Summary judgment therefore is not warranted based on this claim.[7]

### III. Conclusion

We hold that Mr. McGuigan has failed to satisfy the requirements for summary judgment as to either the Davises' intentional misrepresentation claim or their Tennessee Consumer Protection Act claim. We therefore reverse the decision of the Court of Appeals and remand the case to the trial court for further proceedings consistent with this opinion. Costs are assessed against the appellees, Patrick J. McGuigan and McGuigan & Associates, for which execution may issue if necessary.

_____
JANICE M. HOLDER, JUSTICE

---

[7] Mr. McGuigan also contends that the Davises cannot show that they suffered an ascertainable loss *as a result of* his action. As we explained in Section II.A.iii., there is a genuine issue of material fact as to whether the Davises' reliance on Mr. McGuigan's appraisal was reasonable. This issue of material fact likewise precludes summary judgment as to whether Mr. McGuigan's appraisal caused the Davises an ascertainable loss.