# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### November 16, 2011 Session

## LAUNDRIES, INC. v. COINMACH CORPORATION v. CARLA MOYER, ET AL.

### Appeal from the Chancery Court for Davidson County
### No. 10838III     Ellen H. Lyle, Chancellor

---

### No. M2011-01336-COA-R3-CV - Filed March 20, 2012

---

Plaintiff filed an action to recover $150,000 due on a promissory note executed in conjunction with the purchase of its assets. Defendant admitted that it had not paid the full amount of the promissory note but denied that the amount was due, and asserted a counterclaim contending, *inter alia*, that the plaintiff had breached the asset purchase agreement, committed misrepresentation and not disclosed material facts with respect to the transaction, had fraudulently induced defendant to close on the transaction, and that plaintiff had been unjustly enriched. Plaintiff filed a motion for dismissal and for judgment on the pleadings, which the trial court granted. Defendant appeals. Finding that the causes of actions asserted in defendant's counterclaim failed to state a claim for relief, we affirm the dismissal of the counterclaim. We reverse the grant of the motion for judgment on the pleadings and remand the case for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part and Reversed in Part; Case Remanded**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which PATRICIA J. COTTRELL, P.J., M.S., and FRANK G. CLEMENT, JR., J., joined.

Griffin S. Dunham, Nashville, Tennessee, for the Appellant, Coinmach Corporation.

Russell B. Morgan and Frankie N. Spero, Nashville, Tennessee, for the Appellees, Laundries, Inc., Carla Moyer, Sheri Cotham, and Christi Cotham.

## OPINION

### BACKGROUND

Laundries Inc. ("Laundries") filed a complaint to recover $150,000 as the balance due on a promissory note executed by Coinmach Corporation ("Coinmach"). Coinmach and Laundries are both companies that install and maintain commercial laundry equipment in

leased residential premises and on November 2, 2009, they entered into an Asset Purchase Agreement which provided that Coinmach would purchase substantially all of Laundries' assets for the total sum of $725,000, of which $130,000 would be paid at closing; Coinmach executed a Promissory Note ("Note") for the balance of $595,000. The Note was attached as an exhibit to the complaint and specified, in pertinent part, that Coinmach would make two payments of $297,500: the first payment by April 1, 2010, and the second payment by May 1, 2010. The complaint alleged that "[a]ll conditions required under the Note to permit it to mature have been satisfied."

In its answer, Coinmach admitted that it executed the Note and that it did not pay the $150,000, but denied that the sum was due, that non-payment constituted a "failure," or that the conditions permitting the Note to mature had been satisfied. Coinmach also asserted fourteen affirmative defenses. Coinmach subsequently filed a Counter-Complaint,[1] alleging that Laundries failed to disclose that three leases which Laundries previously held had been terminated by the tenants; Coinmach sought to recover for, *inter alia,* breach of contract and misrepresentation and named Carla Moyer, Sheri Cotham, and Christi Cotham, shareholders of Laundries ("Shareholders"), as counter-defendants.[2]

Laundries and Shareholders filed a document styled "Plaintiff's and Third-Party Defendants' Motion for Judgment on the Pleadings and to Dismiss Counter-Complaint and Third Party Complaint." The motion was based on Coinmach's admission in its answer that it had not paid the $150,000 due on the Note and on the allegation in the counterclaim that, prior to the closing, Coinmach had received "all of the documents upon which it bases its claims for breach of contract, fraud in the inducement, misrepresentation, unjust enrichment, and declaratory judgment" but that its counsel did not open the package and review the documents until the final Asset Purchase Agreement had been signed and returned to Laundries. The trial court denied the motion; in so doing, the court construed the counterclaim as alleging that Laundries had "an ongoing obligation to provide current, explicit cancellation information [about the leases]." The court noted that the termination letters, attached as exhibits to the counter-complaint, supported a reasonable inference that Laundries "failed to provide timely, explicit notice of the cancellation of these leases."

Coinmach later moved to amend the counterclaim; the court granted the motion and directed counsel for Coinmach to "specify whether the atypical duty of ongoing notice during

---

[1] The pleading was originally called a Counter-Complaint; Coinmach later amended the pleading and called it an Amended Counterclaim. The parties and the trial court referred to the Counter-Complaint and Amended Counterclaim as a "Counterclaim and Third-Party Complaint" or "Counter-Complaint and Third Party Complaint." The document at issue on appeal is the amended counterclaim.

[2] Although the parties continually refer to the Shareholders as the "Third Party Defendants," there is no motion to add the Shareholders as third party defendants and no third party complaint in the record on appeal. The Shareholders' status in this action is not an issue on appeal.

due diligence is what was meant in paragraph 11 . . . ."[3]  Coinmach then amended its counterclaim, asserting, *inter alia*, that paragraph 8(e) of the Asset Purchase Agreement created an ongoing duty to provide notice of lease terminations.  Laundries and Shareholders renewed their motion to dismiss and for judgment on the pleadings and the court granted the motion, dismissing the amended counterclaim and awarding Laundries judgment for $150,000 plus interest, fees and costs.  In its ruling, the court reasoned that a seller's duty to disclose does not arise where ordinary diligence would have furnished the information to the buyer, and that the diligence expected of Coinmach—*i.e.* opening the package of documents and reviewing the termination letters provided by Laundries prior to the closing—was not burdensome.  Coinmach appeals.

**DISCUSSION**

The motion for judgment on the pleadings is governed by Tenn. R. Civ. P. 12.03 and the motion to dismiss the amended counterclaim by Tenn. R. Civ. P. 12.02(6).  Because the standards applicable to the resolution of the motions are different, it is necessary to consider each separately.

I.  Dismissal of the Amended Counterclaim

A motion to dismiss for failure to state a claim under Tenn. R. Civ. P. 12.02(6) challenges the legal sufficiency of the complaint, not the strength of the factual allegations therein.  *Trau-Med of America, Inc. v. Allstate, Inc.*, 71 S.W.3d 691, 696 (Tenn. 2002).  In considering such a motion, the court must construe the complaint liberally, presume all factual allegations to be true and give the plaintiff the benefit of all reasonable inferences.  *Id.*  The complaint should not be dismissed for failure to state a claim unless it appears that the plaintiff can prove no set of facts in support of his or her claim that would warrant relief.  *Id.*  The appellate court reviews the trial court's legal conclusions *de novo* without giving any presumption of correctness to those conclusions.  *Id.* at 696–97.  We set out below the salient facts alleged in the amended counterclaim to form the basis of each cause of action asserted by Coinmach, assuming them to be true.

---

[3] In its order granting the amendment, the court explained its rationale for imposing this requirement on Coinmach:

> [O]n December 3, 2010, the motion of the defendant to amend was heard and granted.  At the hearing, counsel for the plaintiff raised the unusual construction the Court had placed on [the counterclaim].  The Court acknowledged the same and stated that the construction was central to its denial of the plaintiff's motions [for judgment on the pleadings and for dismissal].  Counsel for the defendant, who had not prepared the counterclaim, stated that he was unsure whether the Court's construction is what the pleader meant.  In the face of this need for clarification, the Court ORDERED [defendant to clarify the extent of Laundries' duty to disclose].

From July 2009 until October 2009, agents and representatives of Coinmach and Laundries negotiated the terms of a purchase by Coinmach of substantially all of Laundries' assets. Among the assets to be purchased by Coinmach were numerous leases for laundry facilities at residential properties in Nashville, Tennessee, including two leases for property owned by Meharry Medical College and a lease for facilities at Bradford Woods Apartments. During the months of negotiation, various drafts of the Asset Purchase Agreement and other documents were transmitted between the parties. Among the documents was a Due Diligence Spreadsheet, prepared by Coinmach and supplied to Laundries, which indicated that the Bradford Woods lease expired May 31, 2010, with an automatic renewal provision, that one of the Meharry leases expired October 31, 2010, with an automatic renewal provision, and that the other Meharry lease expired May 31, 2015, with an automatic renewal provision. None of the documents disclosed or informed Coinmach, and Coinmach was not otherwise advised, of any problems associated with the leases. During the period of negotiations, Laundries was aware of terminations of the three leases.

On Friday, October 30, 2009, Laundries' counsel notified Russell Winick, counsel for Coinmach, during a telephone conversation that Laundries would be sending Mr. Winick a package containing copies of the closing documents. At that time, the terms of the final Asset Purchase Agreement and other transaction documents had not been finalized, and the parties were still actively negotiating the sale. During the conversation, Laundries' counsel did not indicate that Laundries would be providing any previously unfurnished or undisclosed termination letters regarding any of Laundries' leases and stated that the documents Laundries was forwarding were "nothing you haven't seen before" and that there was "nothing new" in the documents. The package of documents was received by Mr. Winick on Monday, November 2, 2009—the date on which the parties signed the Asset Purchase Agreement and closed on the purchase.[4] Mr. Winick did not read the documents in the package until after the purchase was completed; at that time, he discovered the letters terminating the leases for the properties at Meharry Medical College dated in October 2009 and at Bradford Woods Apartments in April 2009.

Based on these allegations, Coinmach asserted causes of action for breach of contract and misrepresentation; Coinmach sought a declaratory judgment that Laundries breached the Asset Purchase Agreement and that the termination letters had not been disclosed; Coinmach also sought rescission of the Asset Purchase Agreement, promissory note and other documents due to Laundries' fraud in inducing Coinmach to execute the documents; finally, Coinmach sought relief for unjust enrichment and equitable estoppel. We consider each cause of action in turn.

---

[4] The Amended Counterclaim alleged: "Pursuant to and contemporaneous with its execution of said Final APA, Coinmach executed a Promissory Note. . . ."

A. Breach of Contract

Coinmach alleged that Laundries and Shareholders breached the Asset Purchase Agreement by failing to disclose the fact that Laundries had received termination letters for Dorothy Brown Hall, Meharry Towers, and Bradford Wood Apartments and that the existence of the letters was required to be disclosed. Coinmach alleged that Laundries' non-disclosure of the termination notices violated Sections 8(e) and 11(a)(v) of the final Asset Purchase Agreement. The amended counterclaim asserted that because Section 8(e) was in each draft of the Asset Purchase Agreement, an "ongoing duty of Laundries to supply Coinmach with notice of any fact that was inconsistent with Paragraph 8(e) during the due diligence period prior to execution of the Final APA" was established.

Sections 8(e) of the Asset Purchase Agreement provides:

8. **Seller's Representations and Warranties**. Except as set forth on the Disclosure Schedule attached hereto and incorporated herein by reference, Seller and the Selling Shareholders severally and jointly hereby represent and warrant to Buyer as of the date hereof and of the Closing Date as follows:

> * * *

(e) To Seller's knowledge and except as identified on **Exhibit A**, (I) Seller is not in material breach of Seller's obligations under any Location Contract, and the other parties to the Location Contracts are not in material breach of their obligations under any Location Contract; (ii) Seller has received no notice of breach, cancellation, termination or dispute in respect of any Location Contract; and (iii) the Location Contracts are valid, binding and enforceable in all material respects, in full force and effect, and binding against the parties thereto in accordance with their own respective terms, and any payments due to any parties thereunder are not in arrears or otherwise past due. For purposes of this subsection, Seller shall be deemed to have constructive knowledge of any events occurring or circumstances accruing 15 or more days prior to the Closing, in addition to all maters of which Seller has actual knowledge.

Section 11(a)(v) provides:

(a) Conditions to Buyer's Obligations to Consummate the Closing. Buyer's obligation to consummate the Closing is subject to the delivery by Seller on or prior to the Closing Date of each of the following:

* * *

　　　　(v) The **Disclosure Schedule**, executed by a duly authorized officer of Seller, setting forth exceptions to the representations and warranties contained in this Agreement and other information called for by the provisions of this Agreement, which shall be made a part of this Agreement and incorporated herein in entirety by reference thereto

Giving Coinmach the benefit of reasonable inferences arising from the amended counterclaim, a fair reading of Sections 8(e)(ii) requires Laundries to list on Exhibit A any "notice[s] of breach, cancellation, termination or dispute in respect of any Location Contract."[5] Pursuant to Subsection 8(e)(iii), the Location Contracts subject to disclosure were those that Laundries could warrant were "valid, binding and enforceable in all material respects, in full force and effect" at the time of the execution of the Asset Purchase Agreement. The plain language of Section 11(a)(v) requires Laundries to identify on a Disclosure Schedule "exceptions to the representations and warranties contained in this Agreement and other information called for by the provisions of this Agreement."[6] The duty created by Sections 8(e) and 11(a)(v) was to disclose any termination or cancellation of leases of Laundries' Locations or Location Contracts occurring between the date of execution of the Agreement and the date of closing; this duty arose when the Agreement was executed. At the time the parties executed the Agreement, the leases covering the three properties at issue had been terminated; consequently, there was no duty to disclose that fact. As a result, the amended counterclaim failed to state a claim for breach of contract on the basis of a failure to disclose.

## B. Misrepresentation & Fraudulent Inducement

Coinmach sought rescission of the Asset Purchase Agreement on the grounds that Laundries fraudulently induced Coinmach to close the transaction and that Laundries and Shareholders misrepresented the existence of the termination letters. With regard to the fraudulent inducement claim, Coinmach alleged that Laundries and Shareholders "purposefully failed to disclose" the termination letters, and that Laundries "fraudulently conceal[ed] the existence of the termination notices."

---

[5] In the "RECITALS" section of the Asset Purchase Agreement, "Locations" are described as "residential communities in the State of Tennessee" where Laundries supplies and operates coin-operated washers and dryers; "Location Contracts" are described as Laundries' "written and oral contracts" for those Locations.

[6] Pursuant to Section 8 of the Agreement, the disclosure schedule was to be attached to the Agreement and incorporated therein by reference.

A party may be held liable for damages caused by its failure to disclose material facts to the same extent that a party may be liable for damages caused by fraudulent or negligent misrepresentations. *Macon County Livestock Mkt. Inc. v. Ky. State Bank, Inc.*, 724 S.W.2d 343, 349 (Tenn. Ct. App. 1986). For a nondisclosure to constitute fraud, the charged party must have a duty to disclose that fact or condition. *Odom v. Oliver*, 310 S.W.3d 344, 349 (Tenn. Ct. App. 2009) (citing *Lonning v. Jim Walter Homes, Inc.,* 725 S.W.2d 682, 685 (Tenn. Ct. App. 1986)). A party to a contract does not have a duty to disclose a material fact where ordinary diligence would have revealed the undisclosed fact. *Odom*, 310 S.W.3d at 349–50 (citing *Simmons v. Evans*, 206 S.W.2d 295, 296 (Tenn. 1947); *Lonning v. Jim Walter Homes, Inc.*, 725 S.W.2d 682, 684 (Tenn. Ct. App. 1986)); *Homestead Group, LLC v. Bank of Tennessee*, 307 S.W.3d 746, 752 (Tenn. Ct. App. 2009); *see also* RESTATEMENT (SECOND) OF TORTS § 551(1) (1976) ("One who fails to disclose to another a fact that he knows may justifiably induce the other to act or refrain from acting in a business transaction is subject to the same liability to the other as though he had represented the nonexistence of the matter that he has failed to disclose, if, but only if, he is under a duty to the other to exercise reasonable care to disclose the matter in question."). "Generally, a party dealing on equal terms with another is not justified in relying upon representations where the means of acquiring the knowledge are readily within the party's reach." *Solomon v. First Am. Nat. Bank of Nashville*, 774 S.W.2d 935, 943 (Tenn. Ct. App. 1989) (citing 37 C.J.S. *Fraud* § 34).

As part of the factual background recited in the amended counterclaim, Coinmach acknowledged that Laundries delivered a package of documents containing copies of the termination letters to Coinmach, through its counsel, prior to the closing, but that counsel did not open the package; had counsel done so and read the documents therein, he could have discovered the letters terminating the leases. Thus, Coinmach had the opportunity to discover the facts it alleged to have been concealed and failed to do so; in this circumstance, the court properly dismissed the claim for fraudulent inducement. *See Odom*, 310 S.W.3d at 349–50.[7]

There are six elements of a claim of intentional misrepresentation: (1) that the defendant made a representation of an existing or past fact; (2) that the representation was false when it was made; (3) that the representation involved a material fact; (4) that the defendant made the representation recklessly, with knowledge that it was false, or without belief that the representation was true; (5) that the plaintiff reasonably relied on the representation; and (6) that the plaintiff was damaged by relying on the representation. *Davis v. McGuigan*, 325 S.W.3d 149, 154 (Tenn. 2010). Whether a person's reliance on a

---

[7] The five elements of a claim of fraudulent inducement to contract are: (1) the defendant made a false statement concerning a fact material to the transaction (2) with knowledge of the statement's falsity or utter disregard for its truth (3) with the intent of inducing reliance on the statement, (4) the statement was reasonably relied upon by the plaintiff, and (5) an injury resulted from this reliance. *Baugh v. Novak*, 340 S.W.3d 372, 388 (Tenn. 2011). The amended counterclaim alleges that the first element, the making of a false statement, was satisfied through failure to disclose. Because there was no duty to disclose, there was no false statement.

representation is reasonable is generally a question of fact requiring the consideration of a number of factors, including the party's sophistication and expertise in the subject matter of the representation, the type of relationship—fiduciary or otherwise—between the parties, the availability of relevant information about the representation, any concealment of the misrepresentation, any opportunity to discover the misrepresentation, which party initiated the transaction, and the specificity of the misrepresentation. *Davis v. McGuigan*, 325 S.W.3d 149, 158 (Tenn. 2010) (citing *City State Bank v. Dean Witter Reynolds, Inc.*, 948 S.W.2d 729, 737 (Tenn. Ct. App. 1996)).

Construing the allegations of the amended counterclaim and the inferences arising therefrom in favor of Coinmach,[8] the fifth element of a cause of action for intentional misrepresentation, reasonable reliance, is not satisfied. The asset purchase transaction was an arms-length transaction between two businesses, both of which were represented by counsel, and the negotiation period lasted for at least four months. No fiduciary relationship between Coinmach and Laundries was alleged in the amended counterclaim, and Laundries was not alleged to have provided Coinmach with false information about the status of the leases. Moreover, as noted previously, when Coinmach was provided copies of the letters, means of acquiring knowledge about the status of the leases were within Coinmach's control, but Coinmach's counsel failed to open the package.[9] Taken together, these factors lead to the conclusion that Coinmach's asserted reliance on the statements attributed to counsel for Laundries was not reasonable. *See Davis*, 325 S.W.3d at 158.

C. Declaratory Judgment

Coinmach sought a declaratory judgment that the termination letters were not disclosed to Coinmach, that the letters were delivered in an "untimely, improper, and surreptitious manner," and that Laundries, through the statements of its counsel, "in effect informed Coinmach that there were no termination letters" in the package. Coinmach also sought a declaratory judgment that Laundries was not entitled to recovery or, alternatively, that Coinmach was entitled to an offset for damages it allegedly incurred as a result of Laundries breach of the Asset Purchase Agreement. Coinmach does not make a separate argument on appeal that the trial court erred in not issuing a declaratory judgment; rather, it

---

[8] With regard to the misrepresentation claim, the amended counterclaim alleged that Laundries and Shareholders "negligently, recklessly, or knowingly [misrepresented] as to the absence of pre-existing termination letters" and that the phrases "nothing you haven't seen before" and "nothing new" regarding the contents of the package of documents constituted misrepresentations.

[9] It was incumbent upon Coinmach to inspect the package of documents to determine what documents it contained and how the documents might be relevant to the transaction. *See Philpot v. Tennessee Health Mgmt., Inc.*, 279 S.W.3d 573, 581 (Tenn. Ct. App. 2007) ("The parties have a duty to learn the contents and stipulations of a contract before signing it; signing a contract without learning such information is at the party's own peril.").

argues that the allegations of the amended counterclaim were sufficient to withstand a Tenn. R. Civ. P. 12.02(6) motion.

Tenn. Code Ann. § 29-14-102 grants courts the authority to "declare rights, status, and other legal relations whether or not further relief is or could be claimed." Whether or not to entertain an action for declaratory relief is discretionary with the trial court. *Huntsville Utility Dist. Of Scott County, Tenn. v. General Trust Co.*, 839 S.W.2d 397, 400 (Tenn. Ct. App. 1992). The trial court did not separately rule on Coinmach's application for declaratory relief; however, the court fully discussed the factual bases upon which the application was based and the related substantive claims.

As discussed above, Laundries complied with its obligation under the Asset Purchase Agreement to provide the termination letters to Coinmach and did not misrepresent the existence of the letters. For the same reasons that we hold that the allegations of the amended counterclaim did not state a claim for the requested substantive relief, we hold that declaratory relief was not appropriate.

D. Unjust Enrichment

In Count VI of the amended counterclaim, Coinmach alleged that Laundries was unjustly enriched when it was "conferred a benefit . . . in the form of an inflated Purchase Price for assets which Laundries and Shareholders did not provide." Coinmach asserted that it was entitled to retain or recover a portion of the purchase price representing the value of the assets that Laundries did not provide.

In an action in which a party alleges that another has been unjustly enriched, the court may impose a contractual obligation where one does not otherwise exist; the contract is not based upon the intention of the parties but is instead an obligation created by law and is "founded on the principle that a party receiving a benefit desired by him, under the circumstances rendering it inequitable to retain it without making compensation, must do so." *B & L Corp. v. Thomas & Thorngren, Inc.*, 162 S.W.3d 189, 217 (Tenn. Ct. App. 2004) (citing *Paschall's, Inc. v. Dozier*, 407 S.W.2d 150, 154 (Tenn. 1966)). A contractual obligation under an unjust enrichment theory will be imposed when: (1) no contract exists between the parties or, if one exists, it has become unenforceable or invalid; and (2) the defendant will be unjustly enriched absent a quasi-contractual obligation. *B & L Corp.*, 162 S.W.3d at 217.

In its brief on appeal Coinmach asserts that "[t]o the extent the Motion to Dismiss also states that unjust enrichment should not apply because the parties had an express contract, Coinmach, in Count II, asks in the alternative for rescission of the contract, thereby making unjust enrichment a viable claim." In Count II of the amended counterclaim Coinmach sought rescission on the basis of fraud in the inducement.

Rescission is a remedy which "should be exercised sparingly and only when the situation demands such." *Richards v. Taylor*, 926 S.W.2d 569, 571 (Tenn. Ct. App. 1996) (citing *James Cable Partners v. Jamestown,* 818 S.W.2d 338, 343 (Tenn. Ct. App. 1991)). "[R]escission of a contract is not looked upon lightly. It is available only under the most demanding circumstances." *Robinson v. Brooks*, 577 S.W.2d 207, 208 (Tenn. Ct. App. 1978). Among the few grounds justifying rescission are fraud and undue influence. *Richards*, 926 S.W.2d at 571. We have previously held that the allegations of the amended counterclaim did not state a cause of action for fraudulent inducement, which was the only basis upon which rescission was sought; consequently, rescission was not available as a remedy to Coinmach and the rights and liabilities of the parties were determined by the Asset Purchase Agreement.

Further, the amended counterclaim does not allege facts that would support a finding that the Asset Purchase Agreement was unenforceable or invalid on any other basis; having failed to do so, the claim for relief premised on unjust enrichment fails.

E. Equitable Estoppel

In Count VII of the amended counterclaim, entitled "Equitable Estoppel", Coinmach alleged, *inter alia*, that Laundries and Shareholders "committed conduct which amounts to a false representation or concealment of material facts" that Laundries "intended or expected that Coinmach would act upon the false representation or concealment" and that "Coinmach, in fact, acted upon the false representation or concealment," all relative to the lease termination letters. Upon those allegations Coinmach sought declaratory relief, compensatory and punitive damages, counsel fees, and costs.

Although Coinmach set forth equitable estoppel as a claim entitling it to relief, the law in Tennessee is clear that equitable estoppel is available to protect a right but not to create one. *Franklin v. St. Paul Fire & Marine Ins. Co.*, 534 S.W.2d 661 (Tenn. Ct. App. 1996) (citing *E.K. Hardison Seed Co. v. Continental Casualty Co.*, 410 S.W.2d 729 (Tenn. Ct. App. 1966); *see also Birmingham-Jefferson County Transit Auth. v. Boatright*, 3:09-0304, 2009 WL 2601926 (M.D. Tenn. Aug. 20, 2009). The doctrine is applied to preclude a party "from asserting rights of property, contract or remedy, as against another who has in good faith relied on such conduct, and has been led thereby to change his position for the worse, and who on his part acquires some corresponding right." *Church of Christ v. McDonald*, 171 S.W.2d 817, 821 (Tenn. 1943) (quoting POMEROY'S EQUITY JURISPRUDENCE, Vol. 3, p.

189).[10]  Thus, it should be asserted as an affirmative defense.  Accordingly, the claim was properly dismissed.

## II.  Motion for Judgment on the Pleadings

When reviewing orders granting a Tenn. R. Civ. P. 12.03 motion, we apply the same standard of review we use to review orders granting a motion to dismiss for failure to state a claim pursuant to Tenn. R. Civ. P. 12.02(6).  *Waller v. Bryan*, 16 S.W.3d 770, 773 (Tenn. Ct. App. 1999).  Accordingly, we review the trial court's decision *de novo* without a presumption of correctness.  *Stein v. Davidson Hotel Co.*, 945 S.W.2d 714, 716 (Tenn. 1997).  When the party moving for judgment on the pleadings is the plaintiff, as in the instant case, the motion argues that the answer fails to controvert any material fact in the complaint and states no legally sufficient defense.  3 NANCY FRASS MACLEAN, TENNESSEE PRACTICE AC 12:11 (4th ed. 2006).  In this case, where the plaintiff, Laundries, is the movant, we treat as false the allegations of the complaint which have been denied, and treat as true all well-pleaded facts in Coinmach's pleadings and all reasonable inferences arising therefrom.  *McClenahan v. Cooley*, 806 S.W.2d 767, 769 (Tenn. 1991).

The complaint alleged, in pertinent part, that Coinmach had executed the Note, that Coinmach had failed to pay $150,000 due, and that all conditions required under the Note for maturity had been satisfied.  In its answer, Coinmach admitted the execution of the Note and that it did not pay $150,000 in principal to Laundries; Coinmach, however,  denied that the $150,000 was "due and owing," that "all conditions required under the Note to permit it to mature have been satisfied," and that Coinmach's nonpayment constituted breach of its contractual obligations under the Note.  The answer also asserted fourteen affirmative defenses that were similar, but not identical, to the allegations and causes of actions asserted in the amended counterclaim.

We treat Laundries' factual allegations that the $150,000 was "due and owing" and that the Note had matured as false because Coinmach denied the allegations.  This denial is

_____

[10]  The doctrine of equitable estoppel requires evidence of the following elements with respect to the party against whom estoppel is asserted: (1) conduct which amounts to false representation or concealment of material facts, or, at least, which is calculated to convey impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) intention, or at least expectation, that such conduct shall be acted upon by other party; and (3) knowledge, actual or constructive, of real facts; with respect to the party asserting equitable estoppel, the following elements are required: (1) lack of knowledge and of means of knowledge of the truth as to the facts in question, (2) reliance upon conduct of party estopped, and (3) action based thereon of such a character as to change his position prejudicially.  *Osborne v. Mountain Life Ins. Co.*, 130 S.W.3d 769, 774 (Tenn. 2004).  The allegations of the amended counterclaim directly refute two required elements of the doctrine: that the party against whom estoppel is asserted must have falsely represented or concealed material facts, and that the party seeking estoppel lacked the means to acquire the truth as to the facts in question.

sufficient to overcome the motion, notwithstanding Coinmach's admission that it did not pay $150,000; the effect of the denial is to require Laundries to prove its entitlement to judgment. In addition, we accept as true the factual allegations in the statement of affirmative defenses, which pled that Laundries did not fully perform its obligations under the Asset Purchase Agreement and did not deliver all of the assets. Taken as true, these allegations, while not stating a claim for relief, may provide a basis for Coinmach to avoid all or part of its remaining obligation on the Note. 3 NANCY FRASS MACLEAN, *supra,* AC 12:11 ("A party moving for judgment on the pleadings admits the allegations of the opponent's pleadings for purposes of the motion alone."). In light of the denials and affirmative defenses, judgment on the pleadings in favor of Laundries was not appropriate.

**CONCLUSION**

For the aforementioned reasons, the judgment of the Chancery Court for Davidson County is affirmed in part and reversed in part. The case is remanded for further proceedings in accordance with this opinion.

_____
RICHARD H. DINKINS, JUDGE