THE PRECIOUS BLOOD SOCIETY *v.* ELSYTHE.

(*Nashville.*    February 4, 1899.)

1. RESCISSION.  *Of deed for fraud.*

Rescission of a deed for fraud will not be decreed unless the com-
plaining party disaffirmed the deed promptly on discovery of
the fraud and ever thereafter consistently adhered to that line
of action.  (*Post, pp. 43, 44.*)

Cases cited and approved: Knuckolls *v.* Lea, 10 Hum., 576; Ruohs,
*v.* Bank, 94 Tenn., 73; Woodfolk *v.* Marley, 98 Tenn., 467.

2. SAME.  *Same.  Example.*

Hence. a vendee's claim to rescission for fraud will be denied,
where, after acquiring full knowledge of all the facts consti-
tuting the fraud, he elected to retain the premises and lease
them to a third party for a term of three years, making the
claim to rescission for the first time in defense of a suit for the
purchase price.  (*Post, pp. 41–43.*)

3. CORPORATIONS.  *Misnomer in deed.*

Misnomer of corporation as vendor in a deed—*e. g.*, "Precious
Blood Society" for the true name, "Female Society of the
Precious Blood"—does not avoid the deed, if the identity of
the corporation is unmistakable, either from the face of the
instrument or from averment and proof.  (*Post, pp. 44–46.*)

Cases cited and approved: 10 N. J. Law, 323; 13 Johns., 38; 5 Ark.,
234; 19 Ala., 659.

4. SAME.  *Objection of misnomer not available.*

The objection of misnomer made by the defendant in a suit
brought by the corporation to enforce a vendor's lien, is unavail-
ing when interposed for the first time in the Court of Chancery
Appeals, and it appears unmistakably what corporation was
intended and that the name objected to was the one used in
the deed and notes and in the pleadings of both parties.  (*Post,
pp. 44–46.*)

5. SAME.  *Deed of, valid without corporate seal.*

The deed of a corporation organized for purely charitable purposes is valid without the affixing thereto of a corporate seal, especially when it does not appear that the corporation has a seal.  (*Post, p. 46.*)

6. SAME.  *Same.*

The deed of a corporation is sufficient, without affixing its corporate seal, to pass an equitable but not a legal estate.  (*Post, p. 46.*)

Cases cited and approved: Garrett v. Belmont Land Co., 94 Tenn., 460; Brinkly v. Bethel, 9 Heis., 786.

---

FROM LAWRENCE.

---

Appeal from Chancery Court of Lawrence County. W. L. GRIGSBY, J. sitting by interchange.

H. B. SOWELL and G. T. HUGHES for Society.

J. D. BUNCH, J. B. BOND, and W. A. STEWART for Elsythe.

BEARD, J.  On November 10, 1893, the complainant executed and delivered to the defendants, Elsythe and Verge, a deed, with clauses of general warranty, by which there was conveyed about 791 acres of land lying in Lawrence County, with all the improvements thereon, for the recited consideration of $8,500.  Of this consideration, $2,000 was paid in cash on different days prior to the execution of the deed, and the remainder was evidenced by five notes executed by the grantees, maturing on

November 15, 1894, 1895, 1896, 1897, and 1898, respectively, to secure the payment of which a lien was retained in the face of the deed. Immediately on receiving this deed the grantees went into possession, and remained upon the property during the year 1894. Their efforts at farming the place disclosed to them that they had been grossly imposed upon by their vendor and its agents, but instead of abandoning the contract and notifying complainant of their purpose to repudiate it, they entered into an agreement with a third party by which they leased to him the property for a term of three years, and placed their lessee in possession.

Pending this lease, and on August 23, 1895, the present bill was filed by the vendor to enforce the lien reserved in the deed, one of the purchase money notes being then overdue and unpaid.

Some time thereafter Elsythe and Verge filed an answer and cross bill, in which they set out, with much detail, the fraudulent representations as to the character and capabilities of this land for farming and other purposes made by the officers and agents of this complainant corporation, and aver that ignorant and unskilled as they were, and secluded from those who would have put them on guard as to the falsity of these representations and the real worthlessness of this property, they became easy victims of the machinations of complainant and its agents. In their cross bill they ask to be relieved from obligation to pay their outstanding notes, and that

they have a decree against their vendor for the money already paid by them, to be charged as a lien on the land.

In due time these averments were met by a positive denial on the part of the Precious Blood Society.

The Chancellor, on the hearing, granted complainant the relief sought in the original bill, and dismissed the cross bill. On appeal the Court of Chancery Appeals find that the cross complainants were the victims of grossly fraudulent statements and representations made by the officers and agents of the complainant. They also find that after the discovery of the fraud the cross complainants made the three-year lease of the property already referred to, but they held that this act was not sufficient to debar them from relief in a Court of equity. They therefore reverse the Chancellor, dismiss the original bill, and grant cross complainants the full relief prayed in the cross bill.

Can this decree be maintained? There is no doubt a Court of equitable jurisdiction would have been quick to grant these parties relief against the fraud thus perpetrated upon them, if they had been diligent in asking its aid, after the discovery of the fraud. But are they entitled to such relief upon this record?

Promptitude in disaffirmance, after the discovery of the fraud, has been uniformly held essential to the maintenance of a claim for rescission. Not only

promptitude is required, but, once having disaffirmed, the victim of the fraud must adhere to that line of action. Vacillation will be fatal to his claim. He will not be permitted to affirm to-day and disaffirm to-morrow. If he does any material cat, "with full knowledge of the facts constituting the fraud . . . which assumes that the transaction is valid," it will be taken as a ratification conclusive upon him. 2 Pomeroy, Sec. 916.

These rules for the guidance of Courts of equity are to be gathered from text-books as well as the opinions of other Courts, but they are nowhere more distinctly announced than in the cases of *Knuckells* v. *Lea*, 10 Hum., 576; *Ruohs* v. *Bank*, 10 Pick., 73, and *Woodfolk* v. *Marley*, 14 Pick., 467. Under these rules we think the cross complainants were in no condition to ask for a rescission of the contract on the ground of fraud.

But the Court of Chancery Appeals base their decree for rescission not only on the ground of fraud, but on certain defects in the deed from complainant to Elsythe & Verge, which they held made it void. These defects were that the articles of incorporation disclosed that complainant's corporate name was the "Female Society of the Precious Blood," and not that actually used in this deed, the "Precious Blood Society;" and again, that the corporate seal was not affixed to the deed.

These objections were made for the first time in that Court. No point was made on these defects

in the answer, and no relief was predicated on them in the cross bill. In this latter pleading, it is true, is found the general averment "that the title to this land is not good," an averment hardly sufficient to cover these defects, unless it be that they were sufficient to make this grant void. This, we think, they did not do.

The record shows that this corporation conducted its business under the name and style of the "Precious Blood Society," it used that as its corporate name in the deed which it executed to Elsythe & Verge, and it accepted from them the purchase money notes payable to it in the same name. By this name it seeks to enforce, as against these parties, its lien on the land sold to them, and the cross complainants call upon it to answer and ask relief against it by the same name.

Under these conditions it is too late, even if the right ever existed, and by the averment just quoted they intended to assert it, for the cross complainants to call in question this deed for misnomer.

But without regard to time and character of pleading, on this record, they cannot do so. The record leaves no doubt that the grantor in this deed is the corporation created by the articles of incorporation. Its identity is put beyond question. This being so, the general concurrence of modern authority is to the effect that a misnomer or variation from the precise name of a corporation, in a grant or obligation by it or to it, is not material, if th

identity of the corporation is unmistakable either from the face of the instrument or from proof and averments. 1 Thomp. on Corp., Sec. 294; Angell & Ames on Corp., Sec. 99; *Rex* v. *Houghley*, 4 B. & Ad., 655; 1 Dill. on Mun. Corp., Sec. 179; *Inhabitants* v. *Strong*, 10 N. J. Law, 323; *African Society* v. *Varick*, 13 Johns., 38; *Bowen* v. *State Bank*, 5 Ark., 234; *Douglas* v. *Branch Bank*, 19 Ala., 659.

Nor do we agree that the lack of the corporate seal worked an effect to destroy this deed. The record does not show that this corporation, organized for purely charitable purposes, had a seal; but even had it one, still the omission to affix it would only have affected the deed in so far as the legal title was concerned; it still would be sufficient to convey an equitable estate. *Garrett* v. *Belmont Land Co.*, 10 Pickle, 460; *Brinkley* v. *Bethel*, 9 Heis., 786.

The result is, the decree of the Court of Chancery Appeals is reversed. The cross bill of defendants is dismissed, and a decree will be entered on the original bill.