VIRGINIA PARKER SUNDERHAUS, Appellant,

*v.*

PEREL & LOWENSTEIN, Appellee.

388 S.W.2d 140.

(*Jackson,* April Term, 1964.)

Opinion filed March 4, 1965.

620

MARTIN EXUM, Jackson, for appellant.

WALDROP, HALL & TOMLIN, Jackson, for appellee.

Mr. Justice Holmes delivered the opinion of the Court.

The Chancellor sustained a demurrer to the original bill in this case as amended. The appellant, Virginia Sunderhaus, has perfected an appeal to this Court.

The original bill alleges that on February 10, 1958 complainant purchased a diamond ring from the defendant, Perel & Lowenstein, for the sum of $699.25 and received from the defendant a written warranty guaranteeing to complainant the perfection of the ring, its value, style, and trade-in value. This written warranty is made an exhibit to the original bill.

It is further alleged in the original bill that thereafter complainant desired to trade this ring for another ring and found that one jeweler appraised the ring as having a value of $300.00, and another jeweler appraised the ring at a value of $350.00.

The original bill prays for rescission of the contract, or, in the alternative, that complainant have a judgment against defendant for the difference between the price paid by her for the ring and the actual value of the ring. The original bill was filed on December 31, 1963. The defendant demurred to the original bill.

Thereafter on January 24, 1964, the original bill was amended so as to allege that complainant discovered the discrepancy between the warranty made an exhibit to the original bill and the actual character of the ring on or

about November 8, 1963. By this amendment it was further alleged that the diamond sold complainant was not a perfect diamond as warranted by the defendant.

Later, on April 10, 1964, a further amendment to the original bill was filed in which complainant alleged that at the time of the purchase of this ring from the defendant the defendant's agent, David L. Richman, represented to her that the diamond was worth the amount of money she paid, that the defendant's agent misrepresented to her the true value of the diamond and that this representation was a fraudulent representation, that she was unfamiliar with the value of diamonds and relied upon the statement made by the agent of the defendant as to value, that the defendant's agent knew at the time of the sale that the price she paid was not the true retail value of the diamond which she purchased, that this amounted to a fraud on the purchaser, and that the defendant through its agent took advantage of complainant's trust in his statements. This amendment prays for rescission of the contract, or, in the alternative, for a judgment for the difference between the sale price and the actual retail value of the ring. In this amendment, complainant abandons the allegations theretofore made as to the imperfection of the diamond.

The brief of appellant filed in this Court states:

"The bill alleges fraud on the part of the defendant. *It is not based upon a contract,* but on the fraud on the part of the defendant to the plaintiff in selling the ring to the plaintiff, representing to her that the diamond was worth $699.25, which she paid." (Emphasis supplied)

It is necessary, therefore to determine whether or not the averments of the bill as amended state a cause of

action for fraud. The rationale of the law relating to fraud is stated in Gibson's Suits in Chancery, 5th Ed., sec. 978 to be:

"Every person who has business dealings with another has the right to expect that he will, in every matter connected with such dealings, do whatever good reason and good conscience require. Indeed, each party to a business transaction, before entering upon any negotiations relative thereto, impliedly contracts with the other or others that, in making and performing his engagements honesty, frankness and fidelity will characterize his conduct."

In this same text, in sec. 979, it is stated:

"Actual fraud is the intentional doing or saying of something, or the intentional concealment of something, material to a business transaction, by a party thereto, whereby the other party is induced to act or not to act, to his injury, the former party contemplating such a result, or such a result being the reasonable and natural consequence of his conduct."

■ The alleged false representations of the appellee's agent relate to the value of the diamond purchased by appellant. We find the general rule to be that ordinarily representations of value made by one seeking to dispose of property commercially are to be regarded as expressions of opinion or commendatory trade statements not constituting a basis of fraud. There are, however, a number of exceptions to this general rule. In 23 Am.Jur., Fraud and Deceit, sec. 59, at Page 830, it is stated:

"* * * Likewise, a statement of value may be of such a character, so made and intended, and so received, as to constitute fundamental misrepresentation; and if

it is made as an assertion of fact, and with the purpose that it shall be so received, and it is so received, it may amount to a fraud. Moreover, a statement of value involving and coupled with a statement of a material fact is fraud.

"Value is frequently made by the parties themselves the principal element in a contract; and there are many cases where articles possess a standard commercial value, in which it is a chief criterion of quality among those who are not experts."

Further, in this same work, the rule is stated, as follows:

"Under various circumstances, it has been held that representations as to market price or market value are not mere statements of opinion, but are representations of fact which, if false, will support an action for fraud or deceit. Thus, it has been held that a false representation as to the market value of bank stock, which has an ascertainable market value, is not the mere expression of an opinion, but a misrepresentation of fact on which fraud may be based to sustain an action for deceit. The relief sought by the party to whom the alleged misrepresentations as to market value were made has usually been based upon the assertion of a right on his part to rescind the contract, on the ground of fraud, and the misrepresentation as to market value or market price, as a rule, has been held to constitute a proper basis for fraud." 23 Am.Jur., Fraud and Deceit, sec. 62, Page 834.

The rule is stated as follows in 3 Pomeroy, Equity Jurisprudence, sec. 878b (5th ed. 1941):

"There is still another and perhaps more common form of such misrepresentation. Wherever a party states a matter, which might otherwise be only an opinion, and does not state it *as the mere expression of his own opinion,* but affirms it *as an existing fact* material to the transaction, so that the other party may reasonably treat it as a fact, and rely and act upon it as such, then the statement clearly becomes an affirmation of fact within the meaning of the general rule, and may be a fraudulent misrepresentation.

"*Value.*—The statements which most frequently come within this branch of the rule are those concerning value."

This Court, in *Augur v. Smith,* 90 Tenn. 729, 18 S.W. 398, recognized that misrepresentations by a seller as to the value of property being sold may constitute actionable fraud. There, the seller represented land located in Mississippi to be timberland worth $3.00 per acre when, in fact, it was cutover land worth 50¢ per acre. The Court held this misrepresentation was not mere "puffing" and allowed the purchaser to recover from the seller the difference between the represented value of the land and its true value.

Of necessity, in the purchase of a diamond or other precious stone, the purchaser must rely upon the integrity of the jeweler from whom he purchases. The layman is in no position to weight the stone and make his own determination as to its true value, but must rely upon statements of value made to him by the jeweler. Here, the bill charges the agent of the appellee falsely represented the value of the diamond to the complainant, knowing the falsity of the representation, that the appellant was not familiar with the value of the diamond and relied upon

the false representation of the appellee's agent. These averments contain all of the elements necessary to state a cause of action for fraud and deceit.

■■ The alternative prayers of the bill for rescission or for damages are not inconsistent. *Hill v. Harriman,* 95 Tenn 300, 308, 32 S.W. 202; *Simmons v. Evans,* 185 Tenn. 282, 288, 289, 206 S.W.2d 295. The averments of the amendment to the bill alleging fraud and deceit are not repugnant or antagonistic to the averments of the original bill alleging breach of warrantly, nor did the filing of the original bill for breach of warranty constitute an election of remedies. *Tallent v. Fox,* 24 Tenn.App. 96, 103, 104, 141 S.W.2d 485.

■ One of the grounds of appellee's demurrer is laches. In *Bernard v. Walker,* 186 Tenn. 617, 629, 212 S.W.2d 600, 605, it is stated there are two essential elements of laches:

"These are the negligence and unexcused delay of Complainant in asserting his alleged claim and injury to the rights of third persons intervening during and therefore on account of the delay."

■■ Here, the bill states the alleged fraud was first discovered by the appellant in November 1963. The original bill was filed December 31, 1963, and the amendment alleging fraud was filed April 10, 1964. There is nothing in the pleadings to indicate that the rights of third persons have intervened, nor is there anything in the pleadings to show that the appellant should have learned of the alleged fraud sooner. Under such circumstances the defense of laches is not made out upon the face of the present record. The duty to act promptly after

the discovery of fraud is stated in *Precious Blood Society v. Elsythe,* 102 Tenn. 40, 43, 44, 50 S.W. 759, 760, to be:

"Promptitude in disaffirmance, after the discovery of the fraud, has been uniformly held essential to the maintenance of a claim for rescission. Not only promptitude is required, but, once having disaffirmed, the victim of the fraud must adhere to that line of action. Vacillation will be fatal to his claim. He will not be permitted to affirm to-day and disaffirm to-morrow. If he does any material act 'with full knowledge of the facts constituting the fraud * * * which assumes that the transaction is valid,' it will be taken as a ratification conclusive upon him."

◼ Here, the bill as amended states the alleged fraud was first discovered in November 1963. The original bill for breach of warranty was filed the last of December 1963. The amendment charging fraud was filed in April 1964. Under these averments it cannot be said that appellant did not promptly disaffirm after discovery of the alleged fraud and adhere to that position.

◼ In the brief of the appellee, the remedies of a purchaser for breach of warranty under the Sales Act are discussed at some length. Where the action is based upon alleged fraud, the provisions of the contract of sale are not controlling. This is clearly stated in *Gwinther v. Gerding,* 40 Tenn. 197, 200, 201. There the Court stated:

"It is certainly true, that, in the absence of fraud, the rule of law is, that the entire agreement of the parties is presumed to have been incorporated in the deed or written contract; and that if the purchaser has failed to provide for his own security by appropriate covenants, he is remediless. But to this rule, according to

all the authorities, fraud constitutes an exception. Fraud vitiates the contract, and the injured party may elect to treat the deed or contract as a nullity, and resort to an action on the case for the deceit.

"In this view, it cannot be at all important whether the contract was executed or executory; or whether the deceit was in relation to a thing included in the deed, or something extrinsic; or whether the subject was real or personal property."

In our judgment it cannot be said that the bill as amended fails to state a cause of action for fraud and deceit. Therefore, the decree of the Chancery Court is reversed and the cause is remanded for further proceedings. Costs of the appeal are adjudged against the appellee. The costs in the Chancery Court will be adjudged by that Court upon the final determination of the case.