IN THE COURT OF APPEALS OF TENNESSEE
EASTERN SECTION

FILED

November 3, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

| | |
|---|---|
| FIRST TENNESSEE BANK NATIONAL ASSOCIATION, | ) C/A NO. 03A01-9704-CH-00134 |
| | ) |
| | ) KNOX CHANCERY |
| Plaintiff-Appellee, | ) |
| | ) HON. SHARON BELL, |
| v. | ) CHANCELLOR |
| | ) |
| C.T. RESORTS COMPANY, INC., | ) |
| C. GARY TRIGGS and JAMES C. | ) |
| CHILDERS, | ) AFFIRMED |
| | ) AND |
| Defendants-Appellants. | ) REMANDED |

J. MICHAEL WINCHESTER and E. BRIAN SELLERS, LACY & WINCHESTER, P.C., Knoxville, for Plaintiff-Appellee.

W. MORRIS KIFER, GENTRY, TIPTOE, KIFER & McLEMORE, Knoxville, for Defendants-Appellants.

### O P I N I O N

Franks, J.

This appeal is from a summary judgment granted to plaintiff against defendants by the Trial Judge.

Essentially, defendants insist that the record contains evidence of misrepresentations of the value of the property by plaintiff's agents, which was

purchased by defendants, and that these representations are actionable under their counter-claims.

The dispute centers around the purchase of 16 condominiums by C.T. Resorts (C.T.) from Valley Fidelity Bank & Trust Company (Valley Fidelity) in May 1990. Valley Fidelity acquired several units in Gatlinburg Village Condominiums after the original developer became seriously ill and was unable to complete the project. Valley Fidelity completed construction and foreclosed on the property in August 1989. C. Gary Triggs and James C. Childers, principals of C.T., were interested in purchasing condominiums in the Gatlinburg area. According to their affidavits, they contacted Re/Max brokers in Morganton, North Carolina. and Sevierville, Tennessee, and reviewed a packet of information provided by the brokers. They also assert that one of the brokers stated that the Gatlinburg Village units were worth more than $100,000.00 each.

C.T. originally proposed to purchase the units for $1,125,000.00. After Valley Fidelity rejected that proposal, Triggs and Childers met with Ogle Stooksbury, a representative of Valley Fidelity, and Stooksbury showed them an appraisal prepared by Charles Smith. Smith first appraised the property on January 27, 1988, and the original appraisal stated values of $112,000.00 per unit for the first phase of construction ($3,248,000.00 total) and $408,500.00 total for the second phase. Smith reaffirmed these estimates in a second appraisal dated April 19, 1989.[1] Smith had conducted both appraisals before the original developer's illness and Valley Fidelity's acquisition of the property. According to their affidavits, Stooksbury also stated that the units were worth the $112,000.00 value reflected in the appraisals or possibly more depending on how well they would furnish them. Stooksbury also stated that

_____

[1]Triggs' and Childers' earlier affidavits apparently claim that Stooksbury showed them both Smith appraisals. Their later affidavits, however, refer only to the second Smith appraisal.

some work remained to be done on the units and that Valley Fidelity would be responsible for it.

Stooksbury also had in his possession an appraisal prepared by Joseph Fannin. This appraisal was dated September 18, 1989, (after Valley Fidelity acquired the property) and valued the units at $81,500.00 to $85,000.00 subject to certain repairs. According to Triggs' and Childers' affidavits, Stooksbury did not show them this appraisal.

After the meeting, the parties signed a purchase agreement. As part of the agreement, C.T. executed a promissory note to Valley Fidelity for $1, 125,000.00, a deed of trust on the units, and various other loan documents.

C.T. defaulted on the note payments and plaintiff foreclosed on the sixteen condominium units, and brought this action to recover a deficiency judgment, interest, attorney's fees and costs.

The trial court initially granted summary judgment to plaintiff, but this Court vacated the judgment and remanded. After remand, appellants filed supplemental affidavits and pleadings and the Chancellor granted summary judgment on the basis that the appraisals were opinions of value, and the disclosure or nondisclosure was not actionable, and granted judgment to plaintiff against defendants jointly and severally, for $809,296.81.

To prevail on a claim of fraudulent misrepresentation, a party must prove that: (1) the defendant made a representation of an existing or past fact; (2) the representation was false when made; (3) the representation was in regard to a material fact; (4) the false representation was made either knowingly or without belief in its truth or recklessly; (5) the party reasonably relied on the misrepresented material fact; and (6) the party suffered damage as a result of the misrepresentation. *Metropolitan Gov't v. McKinney*, 852 S.W.2d 233, 237 (Tenn. App. 1992). Since Valley Fidelity or

3

its agents made no representations of existing or past facts, the appellants did not offer material evidence of this element in the record.

Generally, claims of value made during commercial transactions are considered statements of opinion and do not provide a basis for a fraud claim. *Sunderhaus v. Perel & Lowenstein*, 388 S.W.2d 140 (1965). The policy behind this rule is that "value is largely a matter of judgement and estimation" about which people may differ. 37 Am. Jur. 2d *Fraud and Deceit* § 113 (1968).

Appraisals are generally considered to be a statement of an opinion. Although no Tennessee cases directly address this issue, this Court has considered appraisals in other contexts as estimates of value. *Hiller v. Hailey*, 915 S.W.2d 800 (Tenn.App. 1995). Additionally, Tennessee courts have noted that *caveat emptor* is the general rule applicable to real estate transactions. *Meyer v. Bryson*, 891 S.W.2d 223 (Tenn.App. 1994).

Our view that these appraisals are opinions of value is in accord with courts in other jurisdictions who have determined that an appraisal of land is merely a representation or an opinion of value and therefore not actionable. *George v. Federal Land Bank of Jackson*, 501 So.2d 432 (Ala. 1986); *Frazier v. Southwest Sav. & Loan Ass'n*, 653 P.2d 362 (Ariz. Ct. App. 1982); *Block v. Lake Mortgage Co.*, 601 N.E.2d 449 (Ind.App. 3 Dist. 1992). The United States Supreme Court once noted that "common experience discloses that witnesses the most competent often widely differ as to the value of any particular lot; and there is no fixed or certain standard by which the real value can be ascertained." *Montana Ry. Co. v. Warren*, 137 U.S. 348 (1890).

Cases which have reached the opposite conclusion have generally done so based on facts not present in this case. The Virginia Supreme Court determined that an appraisal of a diamond could constitute an express warranty under U.C.C. § 2-213. *Daughtrey v. Ashe*, 413 S.E.2d 336 (Va. 1992). In *Daughtrey,* however, the

4

appraisal form specifically described the diamonds as a certain quality and color, terms that are not generally ascertainable by the average consumer who must rely on the jeweler's superior knowledge. *Id.* Moreover, the Smith appraisals are contingent upon the occurrence of future events. To be actionable, the alleged misrepresentation must be of an existing or past fact and not merely conjecture or speculation about future events. *Brungard v. Caprice Records*, 608 S.W.2d 585 (Tenn.App. 1980). The first appraisal states that "the value estimate conveyed in this report is made subject to satisfactory completion of the plans and specifications submitted to the appraiser." Although it is unclear whether appellants actually saw the first appraisal, the second Smith appraisal clearly referenced it.

At the time of the second appraisal, the construction had not been completed and the appraisal states that it is an "opinion". Accordingly, appellants were on notice of the contingent, speculative nature of the appraisals.

Appellants also claim that Stooksbury's failure to disclose the Fannin appraisal was fraudulent. Concealment or nondisclosure of information is fraudulent "only when there is an existing fact or condition, as distinguished from a mere opinion, to be disclosed, and when there is a duty to disclose upon the party having knowledge of such facts or condition." *Dozier v. Hawthorne Dev. Co.*, 262 S.W.2d 705, 711 (Tenn.App. 1953). Generally, there is no duty to disclose unless: (1) there is a previous confidential relationship between the parties; (2) where it appears one or each of the parties expressly reposes a trust or confidence in the other; (3) or where the transaction is intrinsically fiduciary and calls for good faith. *Id.*

Since an appraisal is merely a statement or opinion of value, and not a "fact or condition," Stooksbury was under no obligation to disclose. Moreover, none of the usual elements creating a duty of disclosure are present here. The record shows that this was an arms-length transaction. *Accord, Simms v. Biondo*, 816 F.SUPP.. 814

5

(E.D.N.Y. 1993).

Appellants also contend that Stooksbury's statement concerning the value of the property was fraudulent and rely on *Sunderhaus v. Perel & Lowenstein*, 388 S.W.2d 140 (Tenn. 1965). *Sunderhaus* is distinguished from this case because Stooksbury was not, nor did he represent himself to be an expert on local real estate values. Additionally, the jeweler in *Sunderhaus* made factual representations about the diamonds, such as style, and trade-in value to lend support to his statement of value. Appellants also cite *Augur v. Smith*. 18 S.W. 398 (Tenn. 1891). In *Augur*, the seller of land located in Mississippi told the buyer that it was timberland worth $3.00 an acre. In reality, the land was "cutover" land worth only $.50 an acre. *Id. Augur* is distinguishable because the seller's claim of value included the factual representation that the land was covered with timber and the land was far enough away that the buyer relied on the seller's misrepresentations of the existing facts.

Appellants contend that Re/Max broker was acting as Valley Fidelity's agent at the time the broker made representations of value, and that Valley Fidelity's signing the showing agreement ratified all of the broker's prior actions.

The record shows that the appellants initiated contact with Re/Max Brokers, but assuming *arguendo* Valley Fidelity did provide information and ratified the broker's prior actions, there is no basis for liability. According to appellants' affidavits, information provided consisted of "projections" and not misrepresentations of existing facts. Appellants also claim that the Re/Max agent told them that the units were worth more than $100,000.00 each. However, such is an opinion of value and not actionable.

We have reviewed the remaining issues and conclude they are either without merit or are rendered moot by our decision.

The cost of the appeal is taxed to the appellants.

6

_____
Herschel P. Franks, J.

CONCUR:


_____
Don T. McMurray, J.


_____
William H. Inman, Sr.J.

7