# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### February 22, 2012 Session

## MICHAEL J. D'ALESSANDRO v. LAKE DEVELOPERS, II, LLC

### Direct Appeal from the Chancery Court for Hamblen County
### No. 2010-72     Thomas R. Frierson, II, Chancellor

### No. E2011-01487-COA-R3-CV-FILED-MAY 25, 2012

In 2005, Plaintiff purchased a subdivision lot believing it could later be traded toward the purchase of a condominium. Because no condominiums had been built by 2010, Plaintiff filed suit, seeking to rescind the sale and to recover damages. The trial court rescinded the warranty deed and awarded Plaintiff a return of the purchase price, plus city and county taxes paid and prejudgment interest from the filing of his complaint. Finding no failure of consideration, we reverse the trial court's rescission of the warranty deed and its damage awards. We affirm the trial court's dismissal of Plaintiff's breach of warranty, negligent misrepresentation, promissory fraud, and Tennessee Consumer Protection Act claims. All remaining issues are deemed either waived or pretermitted.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Reversed in Part; Affirmed in Part**

ALAN E. HIGHERS, P.J., W.S., delivered the opinion of the Court, in which HOLLY M. KIRBY, J., and J. STEVEN STAFFORD, J., joined.

J. Timothy Crenshaw, James D. Anderson, Nashville, Tennessee; David S. Byrd, Morristown, TN, for the appellant, Lake Developers, II, LLC

H. Scott Reams, Morristown, Tennessee, for the appellee, Michael J. D'Alessandro

## OPINION

### I.  FACTS & PROCEDURAL HISTORY

Lake Developers II, LLC ("Lake Developers") owns a residential subdivision known as "Windswept on Cherokee" in Hamblen County, Tennessee.  In August 2005, while in Tennessee visiting friends, retired New York firefighter Michael D'Alessandro ("Plaintiff") visited the Windswept on Cherokee development in search of a condominium to serve as a  vacation home or a future retirement home.  At that time, the property was undeveloped, but Plaintiff, after allegedly expressing his desire for a condominium *only*, was given a packet of materials which included condominium floor plans and exterior renderings.  He also toured the property site via a four-wheel-drive vehicle, and Lake Developers sales agents allegedly pointed out the future condominium locations and asserted that such condominiums would be built "within a year."

Plaintiff claims that he inquired as to how he could be placed on a condominium wait list.  Lake Developers sales agents[1] allegedly responded that no such wait list existed, but that if Plaintiff purchased a lot in the development, he could later "trade-up" to a condominium and use his lot purchase "as an avenue for a down payment, because there was no other way for [him] to put a down payment on a condo."  Thus, on August 22, 2005, Plaintiff purchased Lot 143 for $164,900.00 and the parties executed an "Offer to Purchase and Contract" for the sale of the property, which did not mention "condominiums."  On that same date, the parties also executed a "Seller Warranty," which provided as follows:

> Lake Developers II, LLC, hereby grants the following warranty:
>
> Seller warrants that the Buyer for Lot 143 will have a first right of refusal to purchase a boat slip and boat enclosure at Windswept's community marina.
>
> Seller also warrants that the Buyer for Lot 143 will have a first right of refusal to purchase two condominiums at Windswept.

Additionally, the parties executed a document titled "Right of Transfer/Right of Purchase Lot Trade Privilege & Notification," (hereinafter "Right of Transfer") which provided:

> Lake Developers II, LLC, Developers of Windswept, and the Buyer, have simultaneously, with the execution of this agreement, entered into an

---

[1]Neither of the two sales agents identified by Plaintiff testified at trial, and at least one of them is no longer employed by Lake Developers.

agreement for the purchase of property at Windswept.  In partial consideration for said purchase, Lake Developers II, LLC, hereby grants a Right of Transfer/Lot of privilege to: <u>Michael J. D'Alessandro</u> of Lot # <u>143</u> in Section <u>1</u> at Windswept, allowing the Buyer the following benefits:

> Early notification guarantee of subsequent Section openings at Windswept.  Order of notification will be given by the date on the Right of Transfer.
>
> Full credit of the original purchase price of the Lot toward the purchase of *a different lot* of equal or greater value in the Windswept community, subject to transfer to the Developer of the first Lot under customary purchase terms set by the Developer.  The credit is also subject to no construction having been started on Buyer's initial Lot.  To be eligible for the credit, Buyer(s) must notify the Developer of its desire to switch *lots* within ten (10) days of being given notice of the subsequent section opening.  Buyer shall maintain the option of selling the initial lot and giving up the transfer privilege, while keeping the early notification guarantee indicated above.

(emphasis added).  On September 21, 2005, Lake Developers executed a Warranty Deed transferring ownership of Lot 143 to Plaintiff.

According to Lake Developers, after Plaintiff purchased the property, Lake Developers moved forward with its planned development of the Windswept community. Following his purchase, Plaintiff received an "update" letter from a Lake Developers sales agent stating that "Much is happening here.  The road building process has begun.  The entrance and roads to Phase I & II are being built.  Asphalting will begin in March 2006. The underground utilities will be put in simultaneously with the road work."  The letter further stated that the boat slips would be completed in "spring of 2006[,]" and that the community marina was currently being built.  Regarding the condominiums, the letter stated that "renderings for the condominiums have been received, approved and submitted to contractors for bids[,]" and that "[a]s soon as those bids are received, we will establish the pricing for each unit and begin taking reservations."  Lake Developers manager, Mitch Potter, testified that since 2005, "[p]lanning and zoning" for the condominiums had commenced and that "[w]ater, sewer, electrical, utilities, all the utilities have been sized, designed, and some of those utilities are in place now to accommodate condominiums." Lake Developers Vice President of Lakefront Development, Rusty Rowe, similarly testified that since 2005 he had been involved with securing bonding for three-phase power necessary

for condominium elevators, installing conduit across phase 3 of the development to facilitate power, and installing a sewer pump station to accommodate condominiums, among other projects. However, Mr. Rowe acknowledged that no geotechnical studies had been conducted for the development of condominiums and that although a general layout concept had been designed, that no architect had been hired to develop "actual building plans for the condominiums."

Despite Lake Developers' efforts to develop the Windswept community following Plaintiff's purchase, by 2010, condominiums had undisputedly not been constructed. Based upon this failure to construct condominiums, Plaintiff, on February 17, 2010, filed a complaint against Lake Developers alleging breach of warranty, failure of consideration, negligent misrepresentation, intentional misrepresentation (promissory fraud), and violation of the Tennessee Consumer Protection Act ("TCPA), and seeking both damages and rescission of the sale.

A bench trial was conducted on June 2, 2011, after which the trial court issued a lengthy memorandum opinion. The trial court rejected Plaintiff's breach of warranty, negligent misrepresentation, promissory fraud, and TCPA claims, but it rescinded the warranty deed apparently based upon its finding of either frustration of commercial purpose or failure of consideration. The trial court awarded Plaintiff the purchase price of $164,900.00, city taxes of $2,487.00, county taxes of $3,919.00, and $11,120.04 in prejudgment interest from the filing of the complaint, for a total award of $182,426.24. Plaintiff was instructed to execute a deed transferring ownership of the lot back to Lake Developers upon payment. Lake Developers timely appealed.

## II.  ISSUES PRESENTED

Appellant Lake Developers presents the following issues for review, as summarized:

1.    Whether the trial court erred in rescinding the contract based upon the doctrine of frustration of commercial purpose; and

2.    Whether the trial court properly dismissed Plaintiff's breach of warranty, negligent misrepresentation, promissory fraud, and TCPA claims.

Additionally, Plaintiff presents the following issues:

3.    Whether the trial court erred in failing to award Plaintiff a return of his homeowners' association dues paid; and

4.      Whether the trial court erred in awarding prejudgment interest only from the date of Plaintiff's complaint, rather than from the execution of the purchase contract.

Finding no failure of consideration, we reverse the trial court's rescission of the warranty deed and we vacate its damage awards. We affirm the trial court's dismissal of Plaintiff's breach of warranty, negligent misrepresentation, promissory fraud, and Tennessee Consumer Protection Act claims. All remaining issues are deemed either waived or pretermitted.

## III.  STANDARD OF REVIEW

On appeal, a trial court's factual findings are presumed to be correct, and we will not overturn those factual findings unless the evidence preponderates against them. **Tenn. R. App. P. 13(d) (2011)**; **Bogan v. Bogan**, 60 S.W.3d 721, 727 (Tenn. 2001). For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect. **Watson v. Watson**, 196 S.W.3d 695, 701 (Tenn. Ct. App. 2005) (citing *Walker v. Sidney Gilreath & Assocs.,* 40 S.W.3d 66, 71 (Tenn. Ct. App. 2000); *The Realty Shop, Inc. v. RR Westminster Holding, Inc.,* 7 S.W.3d 581, 596 (Tenn. Ct. App. 1999)). When the resolution of the issues in a case depends upon the truthfulness of witnesses, the fact-finder, who has the opportunity to observe the witnesses in their manner and demeanor while testifying, is in a far better position than this Court to decide those issues. **Mach. Sales Co., Inc. v. Diamondcut Forestry Prods., LLC**, 102 S.W.3d 638, 643 (Tenn. Ct. App. 2002). "The weight, faith, and credit to be given to any witness's testimony lies in the first instance with the trier of fact, and the credibility accorded will be given great weight by the appellate court." **Id.** When the trial court makes no specific findings of fact, we review the record to determine where the preponderance of the evidence lies. **Ganzevoort v. Russell**, 949 S.W.2d 293, 296 (Tenn. 1997) (citing *Kemp v. Thurmond,* 521 S.W.2d 806, 808 (Tenn. 1975)). We review a trial court's conclusions of law under a *de novo* standard upon the record with no presumption of correctness. **Union Carbide Corp. v. Huddleston**, 854 S.W.2d 87, 91 (Tenn. 1993) (citing *Estate of Adkins v. White Consol. Indus., Inc.,* 788 S.W.2d 815, 817 (Tenn. Ct. App. 1989)).

## IV.  DISCUSSION

### A. Frustration of Commercial Purpose/Failure of Consideration

On appeal, the parties disagree as to the trial court's basis for rescinding the warranty deed. Lake Developers contends that the trial court *sua sponte* relied upon the frustration of commercial purpose doctrine, whereas Plaintiff argues that the trial court based its rescission

upon failure of consideration. Notwithstanding this disagreement, both parties argue that insofar as the trial court's rescission was based upon frustration of commercial purpose, that this reliance was error, as the doctrine is inapplicable in this case.

Unfortunately, a close reading of the trial court's memorandum opinion does not conclusively reveal the basis for its rescission. The opinion lists as an "Issue Presented": "Is the Plaintiff entitled to a rescission of the warranty deed . . by reason of *frustration of commercial purpose* of the contract." (Emphasis added). Likewise, it contains a section entitled "Frustration of Commercial Purpose," but within that section the trial court discusses both the "frustration of commercial purpose" and "failure of consideration" doctrines. Moreover, the trial court states that the economic decline "has supervened to cause an actual *failure of consideration*," but in the following sentence it states that "[T]his Court concludes that Plaintiff has established sufficient facts and circumstances warranting the remedy of rescission of the deed by reason of *frustration of commercial purpose*." (Emphasis added). Unable to discern the trial court's basis for rescinding the warranty deed–frustration of commercial purpose v. failure of consideration–we consider both doctrines below.[2]

The "frustration of commercial purpose" doctrine is a *defense* which excuses performance "'if the risk of the frustrating event was not reasonably foreseeable and . . . the value of counterperformance is totally or nearly totally destroyed . . . .'" **Williams v. Whitehead**, 854 S.W.2d 895, 897 (Tenn. Ct. App. 1993) (quoting *North Am. Capital Corp. v. McCants*, 510 S.W.2d 901, 904 (Tenn. 1974)). Simply put, the doctrine does not create a cause of action. Moreover, in this case, the trial court expressly found that the economic downturn was reasonably foreseeable, and Plaintiff does not contest this conclusion. Accordingly, we find that the frustration of commercial purpose doctrine does not provide a ground for rescinding the warranty deed.

"Failure of consideration is grounds for rescinding a contract for the sale of property." **Ellison v. Ellison**, No. E2007-01744-COA-R3-CV, 2008 WL 4415768, at *12 (Tenn. Ct. App. Sept. 29, 2008) *perm. app. denied* (Tenn. Feb. 17, 2009) (citing *Lloyd v. Turner*, 602 S.W.2d 503, 509 (Tenn. Ct. App. 1980)). A *partial* failure of consideration may serve as a ground for rescission if such "'partial failure of consideration is such as to affect the whole contract and defeat the object of the contract[.]'" **Lloyd**, 602 S.W.2d at 509 (quoting *Farrell v. Third Nat'l Bank in Nashville*, 20 Tenn. App. 540, 101 S.W.2d 158 (1937)). "'A partial

[2]We are free to affirm the trial court's rescission on different grounds. **See Continental Cas. Co. v. Smith**, 720 S.W.2d 48, 50 (Tenn. 1986) (citing *Hopkins v. Hopkins*, 572 S.W.2d 639, 641 (Tenn. 1978)).

failure of performance of a contract will not give ground for its rescission unless it defeats the very object of the contract or renders that object impossible of attainment or unless it concerns a matter of such prime importance that the contract would not have been made if default in that particular had been expected or contemplated.'" *Id.* (quoting 1 Black on Rescission, 512, Sec. 198).

On appeal, Plaintiff argues that the essential purpose of the purchase contract was Plaintiff's acquisition of a condominium. Thus, he contends, because condominiums have not yet been constructed, the essential purpose of the contract has been defeated, and there has been an actual failure of consideration justifying a rescission of the contract. However, Lake Developers argues that there has been no failure of consideration because Plaintiff admittedly maintains a right of first refusal with regard to two condominiums and because Plaintiff maintains ownership of the lot, which has allegedly increased in value.

As relevant to this issue, the trial court made the following findings:

> In the case at bar, the evidence preponderates in favor of a finding that during his viewing the Windswept Subdivision property, and his consideration of the printed materials presented by agents of the Defendant, Mr. D'Alessandro's primary intent was to purchase a condominium. As an inducement to secure Plaintiff's consent and agreement to ultimately purchase a condominium, Defendant encouraged Mr. D'Alessandro to purchase an unimproved lot so that said asset could be used as a down payment toward the eventual acquisition of a condominium. Inherent in such inducement was Defendant's representations that condominiums would be constructed. Clearly, the essential purpose of the contract of purchase between the parties resulting in a warranty deed was that Mr. D'Alessandro would acquire ownership of a condominium residence.

It appears that the trial court implicitly modified the contract based upon Plaintiff's claims–and its finding–that Plaintiff intended to obtain a condominium and that Defendant induced Plaintiff into purchase a *lot* so that a condominium could ultimately be obtained.

The written agreements in this case, however, simply do not support the trial court's finding that the object of the contracts was the acquisition of a condominium. Again, the documents in play in this case are: 1) *Offer to Purchase and Contract* - provided for purchase of a lot; 2) *Seller Warranty* - granted Plaintiff right of first refusal to purchase two condominiums; 3) *Right of Transfer* - granted full credit of the original purchase price of the

lot towards the purchase of a different lot. Thus, pursuant to the written documents, Plaintiff was entitled to a lot, a right of first refusal regarding condominiums, and the right to transfer his lot for another lot.

The trial court specifically found that Defendant intends to build condominiums, Defendant testified that it intends to honor Plaintiff's right of first refusal, and Plaintiff, himself, conceded that he still owns a right of first refusal to purchase two condominiums. Moreover, Lake Developers LLC manager Mitch Potter testified that he "did not commit to [Plaintiff] to build a condominium in any time frame[,]" nor did he make a "legally, bind[ing] commit[ment] to build the condominiums" at all. Here, there is simply no written agreement entitling Plaintiff to purchase a condominium within a certain time frame, and Plaintiff received everything to which he was entitled under the written agreements. Because Plaintiff has received the benefit of his bargain, we can find no failure of consideration to support a rescission thereof.

### B. Breach of Warranty

As set out above, the Seller Warranty provided in relevant part: "Lake Developers II, LLC, hereby grants the following warranty: . . . . Seller warrants that the Buyer for Lot 143 will have a first right of refusal to purchase two condominiums at Windswept."[3] In his complaint, Plaintiff alleged a breach of the Seller Warranty, but the trial court rejected this claim, reasoning that Plaintiff still held a right of first refusal to purchase two condominiums "when and if such are constructed[.]" On appeal, Plaintiff argues that the trial court erred in denying recovery under this theory because he claims that "the warranty contemplates that there will be condominiums to purchase."

Again, under its express terms, the Seller Warranty provides Plaintiff only with a first right of refusal to purchase two condominiums; it does not provide a time-frame for their erection, nor does it guarantee erection, at all. Based upon our above-conclusion that Plaintiff has received everything to which he is entitled under the written agreement, we find no breach of the Seller Warranty.

---

[3]The Seller Warranty also provided Plaintiff with a right of first refusal to purchase a boat slip and a boat enclosure. These rights are not at issue on appeal, as Plaintiff concedes that he has exercised these options, choosing not to purchase them.

### C. Alleged Misrepresentations

Next, Plaintiff argues that Defendant made two misrepresentations, which he contends form the basis for claims of negligent misrepresentation and promissory fraud: 1) that condominiums would be built within one year; and 2) that Plaintiff would be able to trade his lot for a condominium. We address each theory below.

#### 1. Negligent Misrepresentation

The requisite elements to establish a cause of action based upon negligent misrepresentation have previously been set forth by the Middle Section of this Court:

> One who, in the course of his business, profession, or employment, or during a transaction in which he had a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon such information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*McElroy v. Boise Cascade Corp.*, 632 S.W.2d 127, 130 (Tenn. Ct. App. 1982) (quoting *Haynes v. Cumberland Builders, Inc.*, 546 S.W.2d 228, 232 (Tenn. Ct. App. 1976)). However, "[t]he misrepresentation must consist of a statement of a material past or present fact." *Id.* (citing *Haynes*, 546 S.W.2d at 232; *Cumberland Portland Cement Co. v. Reconstruction Finance Corp.*, 140 F.Supp. 739, 751 (E.D. Tenn. 1953) *aff'd* 232 F.2d 930 (6th Cir. 1956)). "Thus, statements of opinion or intention are not actionable." *Id.* (citing *Fowler v. Happy Goodman Family*, 575 S.W.2d 496 (Tenn. 1978); *Hamilton v. Galbraith*, 15 Tenn. App. 158, 166 (1932); *Cumberland*, 140 F.Supp. at 751). Similarly, "puffing or other sales talk is not actionable[,]" *id.* (citing *Sunderhaus v. Perel & Lowenstein*, 215 Tenn. 619, 388 S.W.2d 140 (1965)), and "conjecture or representations concerning future events are not actionable even though they may later prove to be false. *Id.* (citing *Young v. Cooper*, 30 Tenn. App. 55, 203 S.W.2d 376 (1947)).

In his complaint, Plaintiff based his negligent misrepresentation claim upon Defendant's alleged misrepresentation "that there would be condominiums developed[.]' On appeal, he attempts to assert the additional alleged misrepresentation regarding the ability to trade his lot for a condominium. The trial court's order provides in relevant part:

The Plaintiff's claim for negligent misrepresentation is based upon the allegation that the Defendant negligently misrepresented that condominiums would be developed and constructed upon the Windswept on Cherokee property following Plaintiff's purchase of a lot in the development.

The trial court dismissed Plaintiff's negligent misrepresentation claim, finding that the alleged misrepresentation "reflected statements of intention concerning future events[,]" and therefore, that the requisite elements had not been shown. Again, on appeal, Plaintiff attempts to rely upon two misrepresentations as the bases for his negligent misrepresentation claim. It does not appear that Plaintiff raised the alleged misrepresentation concerning the ability to trade his lot for a condominium in the trial court as an alleged negligent misrepresentation. However, both alleged misrepresentations concern future events, and therefore, we affirm the trial court's dismissal of Plaintiff's negligent misrepresentation claim.

## 2. Promissory Fraud

Unlike with negligent misrepresentation, a claim of promissory fraud in Tennessee may be based upon alleged misrepresentations involving future events. *See Kroger v. Legalbill.com*, 436 F.Supp.2d 97, 107 (D.D.C. 2006) (citing *Shadhrdar v. Global Housing, Inc.*, 983 S.W.2d 230, 237 (Tenn. Ct. App. 1998)) (footnote omitted). The elements of the claim are as follows:

> (1) an intentional misrepresentation of a fact material to the transaction; (2) knowledge of the statement's falsity or utter disregard for its truth; (3) an injury caused by reasonable reliance on the statement; and (4) a promise of future action with no present intent to perform.

*Hood Land Trust v. Hastings*, No. M2009-02625-COA-R3-CV, 2010 WL 3928647, at *7 (Tenn. Ct. App. Oct. 5, 2010) (quoting *Houghland v. Houghland*, No. M2005-01770-COA-R3-CV, 2006 WL 2080078, at *3 (Tenn. Ct. App. July 26, 2006)). Thus, "[t]o show promissory fraud, plaintiff must prove that the alleged misrepresentation 'embod[ies] a promise of future action without the present intention to carry out the promise.'" *Id.* (quoting *Stacks v. Saunders*, 812 S.W.2d 587, 592 (Tenn. Ct. App. 1990)). "The promisor's intention must be shown to 'be false by evidence other than subsequent failure to keep the promise or subjective surmise or impression of promisee.'" *Id.* (quoting *Biodynamic Techs., Inc. v. Chattanooga Corp.,* 658 F.Supp. 266, 268 (S.D. Fla. 1987) (applying Tennessee law); *see also American Cable Corp. v. ACI Mgmt., Inc.*, 2000 WL 1291265, at *5 (Tenn. Ct. App.

Sept. 14, 2000) ("In the context of a promissory fraud claim, the mere fact that the promisor failed to perform the promised act is insufficient by itself to prove fraudulent intent. The reason is that ordinarily, where nothing else is shown, mere failure to perform a promise can be as consistent with an honest intent as with a dishonest one. Not every broken promise starts with a lie.") (internal citations omitted)).

As the trial court correctly acknowledged, where, as here, a promissory fraud claimant attempts to *rescind* a written instrument, the claimant must prove fraud by clear and convincing evidence.[4] ***Elchlepp v. Hatfield***, 294 S.W.3d 146, 150 (Tenn. Ct. App. 2008) (citing *Noblin v. Christiansen*, No. M2005-01316-COA-R3-CV, 2007 WL 1574273, at *11 (Tenn. Ct. App. May 30, 2007)). At trial, Plaintiff apparently argued both alleged misrepresentations–1) that condominiums would be built within one year; and 2) that Plaintiff would be able to trade his lot for a condominium–as grounds for his promissory fraud claim. The trial court, however, dismissed Plaintiff's promissory fraud claim, finding that Plaintiff had failed to meet his burden of proving a promise of future action without intent to perform.

With regard to the promise to build condominiums, the trial court specifically found that when the instruments at issue were executed, Defendant intended to build condominiums and that its business decision was altered as a result of the subsequent economic decline. Plaintiff has failed to submit evidence to this Court sufficient to overturn this factual determination, and therefore, we find that Defendant's alleged representation concerning condominium construction was not made without intent to carry out the promise so as to support a claim of promissory fraud.

The resolution of the alleged misrepresentation concerning Plaintiff's ability to trade his lot for a condominium is somewhat more precarious. The trial court found that Plaintiff was induced into purchasing his lot "so that [the lot] could be used as a down payment toward the eventual acquisition of a condominium[.]" However, it determined that Defendant made no promise of future action without the present intent to carry out that promise. Taken together, these findings indicate that either 1) a sales representative negligently erroneously represented that a lot-for-condominium trade was permissible; or 2) Defendant innocently altered the trade-in parameters post-representation. In either event, we find that Plaintiff has failed to establish a promise of future action with no intent to perform

---

[4]When the claimant seeks damages, he is obligated only to satisfy a preponderance of the evidence burden of proof. ***Noblin***, 2007 WL 1574273, at *11 (citing *Jarmakowicz v. Suddarth*, No. M1998-00920-COA-R3, 2001 WL 196982, at *10 (Tenn. Ct. App. Feb. 28, 2001)).

-11-

regarding Plaintiff's ability to trade his lot toward the purchase of a condominium. Because Plaintiff has failed to establish the elements of a promissory fraud cause of action, we affirm the trial court's dismissal of the claim.

## C. Tennessee Consumer Protection Act

Next, we address Plaintiff's TCPA claim,[5] as Plaintiff seeks damages, treble damages and attorney fees pursuant to the Act.[6] "The Tennessee Consumer Protection Act creates a cause of action for '[a]ny person who suffers an ascertainable loss of money or property . . . as a result of the use or employment by another person of an unfair or deceptive act or practice declared to be unlawful by' the Consumer Protection Act." ***Davis v. McGuigan***, 325 S.W.3d 149, 161-62 (Tenn. 2010) (quoting Tenn. Code Ann. § 47-18-109(a)(1) (2001)). The Act is to be "construe[d] . . . liberally to protect consumers in Tennessee and elsewhere." ***Tucker v. Sierra Builders***, 180 S.W.3d 109, 115 (Tenn. Ct. App. 2005) (citing Tenn. Code Ann. 47-18-115; *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 925 (Tenn. 1998); *Morris v. Mack's Used Cars*, 824 S.W.2d 538, 540 (Tenn. 1992)). The TCPA expressly enumerates a list of "acts or practices" declared to be "unlawful." **Tenn. Code Ann. §47-18-104**. However, the Act also includes a "catch-all provision that prohibits '[e]ngaging in any other act or practice which is deceptive to the consumer or to any other person.'" ***LeConte Props., LP v. Applied Flooring Sys., Inc.***, No. E2006-01122-COA-R3-CV, 2007 WL 1108904, at *6 (Tenn. Ct. App. April 13, 2007) (quoting Tenn. Code Ann. § 47-18-104(27)). The TCPA is much broader in scope than is common-law fraud. ***Tucker***, 180 S.W.3d at 115 (footnote omitted). "Misrepresentations that would not be actionable as common-law fraud may nevertheless be actionable under the provisions of the . . . TCPA." ***Id.*** (citations omitted). This is because "[c]laims under the TCPA are not limited to misrepresentations that are fraudulent or willful[,] . . . [as] the TCPA applies to any act or practice that is unfair or deceptive to consumers." ***Id.*** (citing Tenn. Code Ann. §§ 47-18-104(a), -104(b)(27); *Smith v. Scott Lewis Chevrolet, Inc.*, 843 S.W.2d 9, 12-13 (Tenn. Ct. App. 1992)) (footnote omitted).

To recover under the TCPA, a plaintiff must prove: "(1) that the defendant engaged in an unfair or deceptive act or practice declared unlawful by the TCPA and (2) that the

---

[5]We reject Lake Developers' assertion that Plaintiff has waived the TCPA issue, in toto, by failing to plead such with particularity.

[6]In his brief to this Court, Plaintiff also argues that the alleged TCPA violations warrant a rescission of the Offer to Purchase and Contract. Because, in the trial court, Plaintiff did not seek rescission based upon TCPA grounds, we will not consider whether any TCPA violations warrant rescission in this case.

defendant's conduct caused an 'ascertainable loss of money or property, real, personal, or mixed, or any other article, commodity, or thing of value wherever situated . . . ." ***Id.*** (quoting Tenn. Code Ann. § 47-18-109(a)(1)) (footnote omitted). To recover, the plaintiff need not show that the defendant's conduct is willful or knowing, but if shown, the plaintiff may recover treble damages. ***Id.*** (citing Tenn. Code Ann. § 47-18-109(a)(3); *Concrete Spaces, Inc. v. Sender*, 2 S.W.3d 901, 910 n.13 (Tenn. 1999); *Holmes v. Foster Pontiac GMC, Inc.*, Shelby Law No. 9, 1989 WL 48515, at *4 (Tenn. Ct. App. May 10, 1989), *perm. app. denied* (Tenn. Oct. 2, 1989); *Haverlah v. Memphis Aviation, Inc.*, 674 S.W.2d 297, 306 (Tenn. Ct. App. 1984)).

The terms "unfair" and "deceptive" are not defined by the TCPA. ***Tucker***, 180 S.W.3d at 116. Thus, "the standards to be used in determining whether a representation is 'unfair' or 'deceptive' under the TCPA are legal matters to be decided by the courts. ***Id.*** (citing *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 129 Cal. Rptr. 2d 486, 491 (2003); *State ex rel. Stovall v. DVM Enters., Inc.*, 275 Kan. 243, 62 P.3d 653, 657 (2003); *United Labs., Inc. v. Kuykendall*, 322 N.C. 643, 370 S.E.2d 375, 389 (1988); *Fisher Controls Int'l, Inc. v. Gibbons*, 911 S.W.2d 135, 139 (Tex. App. 1995)). Our Supreme Court has defined "[a] deceptive act or practice [a]s an act or practice 'that causes or tends to cause a consumer to believe what is false or that misleads or tends to mislead a consumer as to a matter of fact.'" ***Davis***, 325 S.W.3d at 174 (quoting *Tucker*, 180 S.W.3d at 116). "Unfairness" has been given an even broader definition. ***See Tucker***, 180 S.W.3d at 116 (noting that "unfairness" "applies to various abusive business practices that are not necessarily deceptive) (citing Jonathan Sheldon & Carolyn L. Carter, Unfair and Deceptive Acts and Practices § 4.2.3.1, at 118-19 (5th ed. 2001)). "An act is 'unfair' when it causes or is likely to cause substantial injury to consumers which is not easily avoidable by the consumers themselves and is not outweighed by countervailing benefits to consumers or to competition." ***Davis***, 325 S.W.3d at 174 (citing *Tucker*, 180 S.W.3d at 116-17). To be considered "substantial," an injury "must be more than trivial or speculative[,]" ***Tucker***, 180 S.W.3d at 116 (citing *Tungate v. MacLean-Stevens Studios, Inc.*, 714 A.2d 792, 797 (Me. 1998); *Legg v. Castruccio*, 100 Md. App. 748, 642 A.2d 906, 917 (1994)), and typically "involves monetary injury or unwarranted health and safety risks." ***Id.*** (citing Unfair and Deceptive Acts and Practices § 4.3.2.2., at 154). "Consumer injury will be considered substantial if a relatively small harm is inflicted on a large number of consumers or if a greater harm is inflicted on a relatively small number of consumers." ***Id.*** (citing *Orkin Exterminating Co. v. FTC*, 849 F.2d 1354, 1365 (11th Cir. 1988)).

In his complaint, Plaintiff alleged that he informed Lake Developers' agents that he was interested in purchasing a condominium only, and that he was advised that by purchasing a lot, he could obtain a right of first refusal with respect to two condominiums. He alleged

that he "would not have purchased said lot but for the representations of the defendant, through its agents, that the defendant would be developing condominiums within the subdivision." He further stated that "[t]he defendant has now told the plaintiff that the defendant will not be developing any condominiums within the project[.]" Based upon these factual allegations, Plaintiff claimed, among other theories of recovery, that "the representations and actions of the defendant are unfair and deceptive practices under the Tennessee Consumer Protection Act entitling the plaintiff to damages, treble damages, and attorney fees."

At trial, Lake Developers LLC manager Mitch Potter testified that he plans to "back up" Plaintiff's right of first refusal with regard to the purchase of condominiums.[7] He also testified that the condominium project is merely "on hold" and that he "still plan[s] to build the[] condominiums" "when the housing market recovers," but he stated that he "did not commit to [Plaintiff] to build a condominium in any time frame[,]" nor did he make a "legally, bind[ing] commit[ment] to build the condominiums" at all. Lake Developers Vice President of Lakefront Development Rusty Rowe similarly testified that Lake Developers intends to honor Plaintiff's right of first refusal, and Plaintiff, himself, conceded that he still owns a right of first refusal to purchase two condominiums.

According to Plaintiff, he first learned at trial that Lake Developers would not allow him to trade his lot for a condominium if/when such are built. At trial, Mitch Potter contended that he did not authorize Plaintiff to trade his lot for a condominium, and he explained that such a trade would not be permitted. When asked about Plaintiff's assertion that he was told such trading was permissible, he stated, "I don't know what he was told, I can't attest to that." Thus, in his brief to this Court, Plaintiff claims that he is entitled to recovery pursuant to the TCPA not only because condominiums have not been built, but also because he will not be permitted to trade his lot for a condominium, as allegedly promised.

On appeal, Plaintiff lists several specific alleged TCPA violations by Defendant. However, Plaintiff did not attempt to amend his complaint, orally or otherwise, to allege the *specific* "unlawful acts or practices" argued on appeal. Moreover, a review of the trial court transcript reveals that the specific alleged violations were not argued below. Thus, we will confine our analysis to whether Lake Developers' failure to construct condominiums

---

[7]As stated above, the Seller Warranty also provided Plaintiff with a right of first refusal to purchase a boat slip and a boat enclosure. These rights are not at issue on appeal, as Plaintiff concedes that he has exercised these options, choosing not to purchase them.

constituted a violation of the TCPA catch-all provision–that is, whether Lake Developers "[e]ngag[ed] in any . . . act or practice which is deceptive to the consumer or to any other person." **Tenn. Code Ann. §47-18-104(27)**. Additionally, although Lake Developers' unwillingness to abide by its alleged promise to allow Plaintiff to trade his lot for a condominium was apparently not discovered until trial, Plaintiff failed to assert this alleged misrepresentation as grounds for his TCPA claim at trial and it appears that the trial court did not consider such in its resolution of the TCPA claim. Accordingly, we will not consider whether Defendant's refusal to stand by its alleged promise to allow Plaintiff to trade his lot toward the purchase of a condominium gives rise to a TCPA violation.

Again, as stated above, the trial court dismissed Plaintiff's TCPA claim, finding that "Plaintiff has failed to prove that the Defendant, in selling Lot 143, in Phase I of Windswept Subdivision committed any unfair or deceptive act or practices declared to be unlawful by the Tennessee Consumer Protection Act." As relevant to the "failure to construct" argument, the trial court rejected Plaintiff's assertion that Lake Developers never intended to build condominiums, finding instead that condominium construction had merely been "delay[ed] . . . pending an improvement in the current economic environment." We give great weight to the trial court's implicit accreditation of Mitch Potter's testimony, and we find no clear and convincing evidence to overturn this determination. *See Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002); *see also In re Adoption of Destiny R.D.*, No. M2011-01153-COA-R3-PT, 2012 WL 1066496, at *7 (Tenn. Ct. App. Mar. 27, 2012) (noting that trial courts are in the best position to determine intent) (citation omitted). Thus, we find that Lake Developers failure to construct condominiums does not constitute a TCPA violation.

### D.  *Prejudgment Interest & Return of Homeowners' Association Fees*

Finally, Plaintiff seeks both a return of his $900 per year homeowners' association fees[8] and prejudgment interest[9] from the date of purchase, rather than from the filing of his complaint. Based upon our above-determinations that Plaintiff is not entitled to damages, we find no basis for awarding prejudgment interest or a return of homeowners' fees paid.

---

[8]Plaintiff began paying homeowners' association fees in 2005, but it is unclear when he ceased making such payments.

[9]The trial court awarded prejudgment interest at the rate of 5% per annum retroactive to the filing of the Plaintiff's complaint on February 17, 2010. Plaintiff does not appeal the interest *rate* on appeal.

## IV. CONCLUSION

Finding no failure of consideration, we reverse the trial court's rescission of the warranty deed and its damage awards. We affirm the trial court's dismissal of Plaintiff's breach of warranty, negligent misrepresentation, promissory fraud, and Tennessee Consumer Protection Act claims. All remaining issues are deemed either waived or pretermitted. Costs of this appeal are taxed to Appellee, Michael J. D'Alessandro, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, P.J., W.S.